No. 25-5152

_____

# In the United States Court of Appeals for the District of Columbia

_____

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,
*Plaintiffs - Appellants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants – Appellees*,

_____

On Appeal from the United States District Court for the District of Columbia
Case No. 1:25-cv-00943-TNM, Honorable Trevor N. McFadden, District Judge

_____

## PLAINTIFFS-APPELLANTS' MOTION FOR STAY OR, IN THE ALTERNATIVE, INJUNCTION PENDING APPEAL

_____

Lynn Damiano Pearson**
Cassandra Charles**
Joanna Cuevas Ingram**
National Immigration Law Center
P.O. Box 34573
Washington, D.C.  20043
Tel: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

Michelle Lapointe
Emma Winger*
Leslie K. Dellon
Chris Opila*
American Immigration Council
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

*Counsel for Plaintiffs – Appellants*
(Additional counsel listed on signature block)

*Admission Application Pending       **Admission Application Forthcoming

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS .....................................................................................3

LEGAL STANDARD .............................................................................................6

ARGUMENT ..........................................................................................................6

   I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................6

       A.    Plaintiffs Have Established Associational Standing ........................6

       B.    Plaintiff CHIRLA Has Established Organizational Standing..........15

       C.    Defendants Have Violated the APA ..................................................18

  II.    PLAINTIFFS' HARM IS IRREPARABLE. .................................................20

 III.    THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES TIP IN PLAINTIFFS' FAVOR ...........................................................................22

CONCLUSION......................................................................................................23

CERTIFICATE OF PARTIES AND AMICI CURIAE AND CORPORATE DISCLOSURE STATEMENT.......................................................................25

CERTIFICATE OF COMPLIANCE ....................................................................27

CERTIFICATE OF SERVICE ..............................................................................28

# TABLE OF AUTHORITIES

## CASES

*AFL-CIO v. NLRB*, 57 F.4th 1023 (D.C. Cir. 2023)..................................................26

*Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) ....................9

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024) ........................................................................................................................12

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615 (D.C. Cir. 2020) 22

*Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037 (D.C. Cir. 1987) ...................................26

*Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914 (D.C. Cir. 2017)...........29

*Bryan v. United States*, 524 U.S. 184 (1998) ..........................................................27

*Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154 (D.D.C. 2021)........................................................................................... 24, 31

*City of Clarksville v. FERC*, 888 F.3d 477 (D.C. Cir. 2018) ...................................14

*D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1 (D.D.C. 2000)..................................8

*Edgar v. Haines*, 2 F.4th 298 (4th Cir. 2021).........................................................20

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1 (D.D.C. 2014) .........23

*Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585 (E.D. Va. 2004) .....................10

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024).. 13, 15, 22

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) .....................22

*Grosso v. United States*, 390 U.S. 62 (1968) ...........................................................28

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................................... 22, 25

*Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34 (D.D.C. 2019) ...............................................................................11

*Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333 (1977).........................22

*In re Gault*, 387 U.S. 1 (1967) .................................................................................18

*John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129 (D.C. Cir. 2017) .......8

*Karem v. Trump*, 404 F. Supp. 3d 203 (D.D.C. 2019) ............................................11

*League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ............................................9

*Leary v. United States*, 395 U.S. 6 (1969) ...............................................................28

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992 .......................................................14

*Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1 (D.D.C. 2019)...............12

*Marchetti v. United States*, 390 U.S. 39 (1968) ......................................................28

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ................................................26

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ........................................9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ...........................................................................................................29

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)...................................13

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018)...........................................12

*Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932 (D.C. Cir. 1982) ................................................................................................................................26

*Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428 (D.C. Cir. 1995).........23

*New Hampshire Indonesian Cmty. Support v. Trump*, No. 25-CV-38-JL-TSM, 2025 WL 457609 (D.N.H. Feb. 11, 2025) ....................................................................10

*Nw. Immigr. Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31 (D.D.C. 2020)............................................................................................... 24, 31

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007)......9

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015) .................................................................................25

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...........................32

*Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10 (D.D.C. 2021) .......32

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020) ..........................................................10

*Speech First, Inc. v. Shrum,* 92 F.4th 947 (10th Cir. 2024) ......................................12

*State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48(D.C. Cir. 2015) (Kavanaugh, J.) .................................................................................14

*Talbott v. United States*, No. 25-CV-00240 (ACR), 2025 WL 842332 (D.D.C. Mar. 18, 2025) ...........................................................................10

*Tanner-Brown v. Haaland*, 105 F.4th 437 (D.C. Cir. 2024)....................................18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)..................................... 14, 15, 16

*Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333 (D.D.C. 2020).........20

*United States v. Claudio-Becerra*, No. PO 08-2305, 2008 WL 11451346 (D.N.M. Aug. 28, 2008) ...........................................................................27

*United States v. Mendez-Lopez*, 528 F. Supp. 972 (N.D. Okla. 1981)....................27

*United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989)......................................28

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981)...........................................11, 32

*Uzuegbunam v. Preczewski,* 592 U.S. 279 (2021) ...................................................16

**STATUTES**

5 U.S.C. § 705 ...........................................................................................1, 6

8 U.S.C. § 1301 .............................................................................................3

8 U.S.C. § 1302 .............................................................................................3

8 U.S.C. § 1303 ...............................................................................3

8 U.S.C. § 1304 ...........................................................................3, 22

8 U.S.C. § 1305 ...............................................................................3

8 U.S.C. § 1306 ..........................................................................3, 18

8 U.S.C. § 1325 ....................................................................12, 19, 22

8 U.S.C. § 1367 ..............................................................................21

## REGULATIONS

90 Fed. Reg. 11793 (Mar. 12, 2025) ............................................... passim

## OTHER AUTHORITIES

Billal Rahman, *Kristi Noem Breaks Down How Federal Migrants Register Works*, Newsweek (Feb. 26, 2025) ......................................................4

D.C. Cir. *Handbook of Practice and Internal Procedures* (2014)............................6

David Morgan, *Republican US Senator Murkowski on Threat of Trump Retaliation: 'We Are All Afraid'*, Reuters (Apr. 17, 2025, 11:06 PM), https://tinyurl.com/2v4hu4hn......................................................14

Exec. Order No. 14159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443 (Jan. 20, 2025) ........................................................4

Form G-325R Biographic Information (Registration), OMB: 1615-0166, https://tinyurl.com/3txjv5an............................................4, 11, 13, 19

Karina Tsui, *What We Know about the Federal Detention of Activists, Students and Scholars Connected to Universities*, CNN (Apr. 2, 2025, 8:48 PM), https://tinyurl.com/y7z8dysv ......................................................14

Melissa Quinn, *Trump's Crusade Against Big Law Firms Sparks Fears of Long-Lasting Damage*, CBS News (Apr. 2, 2025, 3:20 PM), https://tinyurl.com/5c766bej ......................................................15

Memorandum from the Attorney General re: General Policy Regarding Charging, Plea Negotiations, and Sentencing (Feb. 5, 2025), https://tinyurl.com/25wr8sd5 4

Nancy Morawetz & Natasha Fernández-Silber, *Immigration Law and the Myth of Comprehensive Registration*, 48 U.C. Davis L. Rev. 141 (2014)..........................3

Off. of the U.S. Att'ys, U.S. Dep't of Just., Prosecuting Immigration Crimes Report - 8 U.S.C. § 1325 Defendants Charged (Apr. 9. 2025), https://tinyurl.com/rsedtz5m ..................................................................................12

Press Release, DHS, Secretary Noem Announces Agency Will Enforce Laws That Penalize Aliens in the Country Illegally (Feb. 25, 2025), https://tinyurl.com/mrex6hhy..................................................................................4

Supporting Statement for Biographic Information (Registration), OMB Control No.: 1615-NEW, https://tinyurl.com/2cs24kmp ............................................................ 11

## MOTION FOR A STAY OR, IN THE ALTERNATIVE,
## AN INJUNCTION PENDING

Plaintiffs-Appellants move for a stay pending appeal pursuant to 5 U.S.C.

§705, or in the alternative an injunction pursuant to Federal Rule of Appellate

Procedure 8, of an Interim Final Rule (IFR) on noncitizen registration, 90 Fed.

Reg. 11793 (Mar. 12, 2025). The IFR implements without notice and comment a

new scheme that requires *for the first time* millions of noncitizens to register with

the government with an entirely new form, submit biometrics, and carry their

papers at all times.[1]

## INTRODUCTION

This case challenges Defendants' rushed and arbitrary implementation of a

brand-new universal noncitizen registration scheme by executive action.

Defendants imposed this scheme through an IFR without prior notice and

consideration of public comment and without any meaningful explanation for the

significant shift in policy, in violation of the Administrative Procedure Act

("APA"). As soon as the IFR went into effect on April 11, Defendants began

prosecuting noncitizens newly obligated to register.

The district court recognized that the IFR marks a dramatic change in course

by executive action without the APA's procedural protections. As the court

---

[1] Defendants oppose this motion.

1

observed: "[T]his is a pretty big switcheroo from what's been happening, and [] the case law and the APA would require something more than what [Defendants have] done to implement this rule."  Ex. B (Hrg. Tr.) 22:5-8; *see* Ex. A (Mem. Order) 2-4.

Nevertheless, the district court denied Plaintiffs' motion for a preliminary injunction and APA stay without reaching the merits, solely on the ground that Plaintiffs had failed to establish standing. That is wrong. Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA"), United Farm Workers of America ("UFW"), CASA, Inc. ("CASA") and Make the Road New York ("MRNY") are membership-based organizations of noncitizens and mixed status families who are directly regulated by the IFR and are already experiencing the harms imposed by it. And while the district court sua sponte attempted to cast doubt on the reliability of their evidence—despite Defendants raising no such concern in their papers— Plaintiffs in fact established standing through detailed declarations showing that their members, who are newly required to register under the IFR, and Plaintiff CHIRLA as an organization, will be injured by the new rule. That is ample at this early stage in the litigation.

Absent action from this Court, arrests will continue under an IFR that blatantly disregards the requirements of the APA. Plaintiffs respectfully request that the Court enter an APA stay or injunction to preserve the status quo ante and

protect Plaintiffs and their members from irreparable harm, while they appeal the district court's denial of the preliminary injunction.

## STATEMENT OF FACTS

This case addresses a dramatic change in policy regarding the registration of noncitizens in the United States. While the Immigration and Nationality Act ("INA") contains registration provisions at 8 U.S.C. §§1301-1306, before the IFR, "aliens who had entered the country illegally were effectively exempt from the statutory registration requirements, since there existed no process by which they could register." Ex. A (Mem. Order) 2. Indeed, the United States has never previously adopted a universal noncitizen registration scheme for the purpose of facilitating mass deportation. During World War II, the federal government briefly maintained a national inventory of noncitizens with the promise to grant suspension of deportation to those who registered. Nancy Morawetz & Natasha Fernández-Silber, *Immigration Law and the Myth of Comprehensive Registration*, 48 U.C. Davis L. Rev. 141, 155-60 (2014). Since the end of World War II, the federal government has progressively narrowed the scope of noncitizens subject to registration and, outside the exigencies of wartime or a terrorist attack, accomplished registration through established statutory and regulatory mechanisms for granting immigration status and other immigration benefits. *See id.* at 161-72; *see* Ex. A (Mem. Order) 2-3.

3

Then, on March 12, 2025, Defendants issued the IFR, newly creating a
universal registration system, and consequently a new obligation to register and
carry proof of registration at all times. 90 Fed. Reg. 11793. Their stated purpose
was not to recreate a national inventory but to facilitate mass detention and
deportation. Press Release, DHS, *Secretary Noem Announces Agency Will Enforce
Laws That Penalize Aliens in the Country Illegally* (Feb. 25, 2025),
https://tinyurl.com/mrex6hhy; Billal Rahman, *Kristi Noem Breaks Down How
Federal Migrants Register Works*, Newsweek (Feb. 26, 2025),
https://tinyurl.com/bdz9prye. Defendants promised to vigorously enforce this new
requirement. *See* Exec. Order No. 14159, Protecting the American People Against
Invasion, 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025); Memorandum from the
Attorney General, General Policy Regarding Charging, Plea Negotiations, and
Sentencing, at 3 (Feb. 5, 2025), https://tinyurl.com/25wr8sd5

The IFR creates a new online, English-only general registration form, Form
G-325R. *See* 90 Fed. Reg. at 11795. The form mandates collection of information
beyond what is specifically enumerated in the INA, including uncharged criminal
conduct and detailed information about family members. *See* Form G-325R
Biographic Information (Registration), OMB: 1615-0166,
https://tinyurl.com/3txjv5an (hereinafter "Form G-325R"). The IFR also sets up a
new system to submit biometrics, including fingerprints, and receive proof of

4

registration which must be carried at all times. 90 Fed. Reg. at 11795 & n.7. Defendants estimate that the IFR will attach new registration requirements to between 2.2 and 3.2 million people. 90 Fed. Reg. at 11797.

The IFR asserts that it is exempt from notice and comment rulemaking because it is merely "a rule of agency organization, procedure, or practice" that "does not alter the rights or interests of any party." *Id.* at 11796. Yet at the hearing below, counsel for Defendants conceded that prior to the IFR, there was no "universal form that would apply across the board" for all undocumented immigrants to register. Ex. B (Hrg. Tr.) 43:6-11. And Defendants have made good on their promise to enforce the new obligation—prosecutions for failure to register under this new scheme have already begun. *See* Ex. H (multiple federal criminal complaints under 8 U.S.C. § 1306(a) filed since April 17, 2025); Ex. U (Milagros Cisneros Decl.) ¶¶3-4.

The district court denied Plaintiffs' motion for a preliminary injunction on April 10 solely on standing grounds. Ex. A (Mem. Op).

On April 24, 2025, pursuant to Fed. R. Civ. P. 8(a)(1)(C), Plaintiffs filed a motion for an injunction pending appeal. The district court declined to promptly rule, instead directing a response on May 19 (a longer period than dictated by local rule, *see* LCvR 7(b)), and setting a hearing for June 6—some six weeks after the motion was filed. The Court made clear that a motion to shorten this schedule

would be futile, explaining that it "will not take off in another sprint" to adjudicate Plaintiffs' motion. Ex. C (Order) 1.

## LEGAL STANDARD

To succeed on a motion for an injunction pending appeal the movant must show that the district court likely abused its discretion in denying a preliminary injunction and that they are (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017); D.C. Cir. *Handbook of Practice and Internal Procedures* 33 (2014). The same factors apply to issuance of a stay pursuant to §705. *D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2000) (and cases cited therein).

## ARGUMENT

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.    Plaintiffs Have Established Associational Standing

The district court rejected Plaintiffs' associational standing by disregarding their evidence and concluding it was legally insufficient. Both grounds are baseless.

As to the evidence, there can be no real doubt that Plaintiffs' members are required to register—and, indeed, Defendants never raised any such concerns in their papers. Plaintiffs submitted sworn declarations from organizational

representatives which attest under the penalty of perjury to basic biographical

details of individual members. Exs. D-G (Representative Declarations). Courts,

including the Supreme Court, have routinely "recognized associational standing

based on declarations from leaders of organizations describing their organizations'

membership in sufficient detail to support a finding of standing." *League of United*

*Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2025

WL 1187730, at *24 (D.D.C. Apr. 24, 2025) (citing *Alabama Legislative Black*

*Caucus v. Alabama*, 575 U.S. 254, 271 (2015), *Parents Involved in Cmty. Sch. v.*

*Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007), and *Mi Familia Vota v. Fontes*,

129 F.4th 691, 708 (9th Cir. 2025)); *New Hampshire Indonesian Cmty. Support v.*

*Trump*, No. 25-CV-38-JL-TSM, 2025 WL 457609, at *2 & n.7 (D.N.H. Feb. 11,

2025); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 600 (E.D. Va. 2004). At

a minimum, this evidence is sufficiently reliable at the preliminary injunction

stage, where hearsay is indisputably admissible. *See, e.g., S. Poverty L. Ctr. v. U.S.*

*Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533, at *3 n. 2

(D.D.C. June 17, 2020); *Talbott v. United States*, No. 25-CV-00240 (ACR), 2025

WL 842332, at *9 (D.D.C. Mar. 18, 2025).

     The district court cited no case from this Court holding such a declaration

improper; in fact, the primary case on which the court relies is one in which the

district court *did* rely on so-called "double hearsay" to grant a preliminary

injunction. *Karem v. Trump*, 404 F. Supp. 3d 203, 214–15 & n.3 (D.D.C. 2019), *aff'd as modified,* 960 F.3d 656 (D.C. Cir. 2020) (relying on newspaper articles with others' descriptions of disputes, 1:19-cv-02514 ECF No, 18-14, recognizing that while such evidence may not be "conclusive" at later stages, "'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981))).  The other case on which the court relied—*Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019)—involved a motion for summary judgment under the Freedom of Information Act in which the court gave the defendant an opportunity to present non-hearsay evidence and they declined; it is inapposite. However, in response to the district court's rejection of this evidence as "double hearsay"—a concern the court raised sua sponte during the hearing, *see* Ex. B (Hrg. Tr.) 5-6, 19—Plaintiffs obtained individual declarations from their members, which they submitted to the district court in support of their motion for an injunction pending appeal. *See* Exs. C-N (Member Declarations).

The district court also expressed concern about the reliability of pseudonymous declarations, Ex. A (Mem. Order) 14, but courts have long relied on them. *See, e.g., Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 32 (D.D.C. 2019)*, rev'd on other grounds and remanded sub nom. Make the Rd. New*

*York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 (D.D.C. 2018), *aff'd and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020); *see also Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772-73 (11th Cir. 2024); *Speech First, Inc. v. Shrum,* 92 F.4th 947, 950 (10th Cir. 2024) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458–59 (1958)). Of course, Defendants or the district court could further examine these factual questions before final judgment. But there can be no serious doubt about the basic facts Plaintiffs have adduced, and at a minimum at this early stage they have established a "substantial likelihood of standing" sufficient for interim relief. Ex. A (Mem. Order) 1.[2]

Based on those undisputed facts, and under binding Supreme Court precedent, these members have standing as directly regulated parties who must, for the first time, submit a lengthy registration form that requires information on a range of sensitive matters, travel to a federal building to provide biometrics, and carry proof of registration at all times or face arrest and federal prosecution. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those

---

[2] Nevertheless, Plaintiffs also offered to make unredacted declarations available under seal to the district court for in camera review, if requested, or in the alternative, to attempt to negotiate a protective order with Defendants.

9

cases, standing is usually easy to establish."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992) (where a person is "an object of the [government] action . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it"); *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018) (same); *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (Kavanaugh, J.) (same). Here, Plaintiffs' members are directly regulated parties challenging a rule under which they are regulated.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021), on which the district court heavily relied, is inapposite. *See* Ex. A (Mem. Order) 15. *TransUnion* did not involve directly regulated parties. Instead, it held that individuals Congress had provided with a statutory cause of action to challenge a credit agency's failure to comply with the Fair Credit Reporting Act must also have a concrete injury to establish standing under Article III. *See* 594 U.S. at 423-24; *id.* at 427 (rejecting argument that an "uninjured plaintiff" may sue "to ensure a defendant's compliance with regulatory law") (internal quotation omitted). But this is not a case where the Court must adjudicate a "hypothetical or abstract dispute[]" nor would it produce an "advisory opinion[]." *Id.* at 423-24. Plaintiffs' members are subject to a concrete and particular harm—the IFR directly imposes a series of new legal obligations on

them which can be immediately redressed by an order enjoining the IFR. This is enough for standing. *See All. for Hippocratic Med*, 602 U.S. at 382.

But Plaintiffs established even more. Defendants' own estimates show an average of $90 in wage loss per individual for the nearly two hours needed to complete the new process, and an average of $118 million in annual lost wages for affected individuals. *See* Supporting Statement for Biographic Information (Registration), OMB Control No.: 1615-NEW, https://tinyurl.com/2cs24kmp (click on Statement A, G-325R-001_NEW_EMGCY_SPTSTMT.v2.docx); 90 Fed. Reg. at 11799. Form G-325R requires disclosure of a wide range of sensitive, personal information, including details about any uncharged criminal conduct, personal activities, and family members. *See* Form G-325R. These additional harms are indisputably sufficient for standing. *See TransUnion*, 594 U.S. at 425 ("monetary injury" and "disclosure of private information" both "traditionally recognized as providing a basis for lawsuits in American courts"); *see also Uzuegbunam v. Preczewski,* 592 U.S. 279, 292 (2021) ($1 damages sufficient for standing).

Moreover, some members are unable to access the IFR registration process *at all*, because the IFR provides that it is only available online, and only in English, exposing them to criminal penalties for either failure to register or for errors in the registration. Ex. I ("Ana" Decl.) ¶¶ 5, 8; J ("Gloria" Decl.) ¶¶ 7, 9.

11

Members who are seeking statutorily authorized immigration benefits that do not count as registration forms must now use this separate registration process that Defendants have stated is for mass deportation, placing them at imminent risk of removal and the inability to pursue congressionally authorized immigration relief for which they are eligible. *See* Ex. L ("Ursela" Decl.) ¶ 4, Ex. M ("Tiana" Decl.) ¶ 5; Ex. N ("Guvelia" Decl.) ¶ 9.

Finally, the IFR threatens constitutionally protected interests of Plaintiffs' members, including the protection against self-incrimination by forcing admissions of criminal conduct. Despite the district court's doubts, Mem. Order 18, Member Ursela certainly can be prosecuted under 8 U.S.C. §1325—either in delinquency proceedings until she turns 21, or in adult proceedings thereafter. *See* 18 U.S.C. §5031. Defendants have promised to vigorously enforce this particular offense and indeed, have begun doing so across the country. *See* Off. of the U.S. Att'ys, U.S. Dep't of Just., Prosecuting Immigration Crimes Report - 8 U.S.C. § 1325 Defendants Charged (Apr. 9. 2025), https://tinyurl.com/rsedtz5m (reporting 1,596 prosecutions in March 2025, a 240 percent increase compared to January 2025). And individuals in delinquency proceedings have a Fifth Amendment right against self-incrimination, just like those in adult criminal proceedings. *In re Gault*, 387 U.S. 1, 49 (1967).

12

The district court brushed aside this harm, deeming Ursela's "Fifth Amendment claim" as unripe. Ex. A (Mem. Order) 18-19. But that misunderstands the role of self-incrimination concerns here. Plaintiffs are not seeking to enjoin the IFR as a violation of the Fifth Amendment. Rather, Plaintiffs' *claims* are under the APA, but part of the *injury* is forced disclosure that burdens the Fifth Amendment rights of registrants by requiring them to admit to criminal conduct on threat of federal prosecution, without providing any evident mechanism to assert a privilege (the options are "yes" or "no"). *See* Form G-325R at 7. In any event, courts must assume plaintiffs will succeed on the merits for purposes of a standing analysis. *See Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024).[3]

Similarly, Plaintiffs' members have shown that the IFR arguably burdens their First Amendment protected speech by requiring them to report on their protected advocacy "activities," *see* Form G-325R at 6, exposing them to imminent retaliatory enforcement (given Defendants' express promises to use registration as a tool for enforcement) *for their speech*. *See* Exs. I ("YL" Decl.) ¶¶ 3-4; Ex. J ("ME" Decl.) ¶¶ 4-5; Ex. K ("JC" Decl.) ¶¶ 4-6; Ex. L ("ALDC" Decl.) ¶¶ 4-5; Ex. M ("NC" Decl.) ¶¶ 4-5; Ex. N ("PH" Decl.) ¶¶ 3-5; Ex. E ("Luisa" Decl.) ¶¶ 4-5.

---

[3] Because standing analysis requires an assumption that Plaintiffs will prevail on the merits, the conclusion that their injury is a "mere requirement to abide by the law," Ex. A (Mem. Order) 15, is likewise an improper conflation of the merits and standing.

13

Again here, Plaintiffs do not bring independent First Amendment claims. As for standing, they invoke federal court jurisdiction as parties directly regulated by the IFR—which is bolstered in part by the *injury* they suffer by being forced to expose themselves to an objective threat of retaliatory action. Therefore, the cases relied on by the district court are inapposite. *See* Ex. A (Mem. Order) 20.

Moreover, even if they were not directly regulated, Plaintiffs would meet the standard for a standalone First Amendment harm. Plaintiffs agree with the district court that the standard is not subjective fear but instead whether the government action would cause a person of "ordinary firmness" to feel a chilling effect. *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021); *see Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 381 (D.D.C. 2020). Here, against the backdrop of extraordinary recent enforcement directly tied to speech activities, a person of "ordinary firmness" would experience chilling of speech by having to disclose to the government First Amendment protected activity on a form whose stated purpose is to aid in deportation efforts. *See* Karina Tsui, *What We Know about the Federal Detention of Activists, Students and Scholars Connected to Universities*, CNN (Apr. 2, 2025, 8:48 PM), https://tinyurl.com/y7z8dysv; David Morgan, *Republican US Senator Murkowski on Threat of Trump Retaliation: 'We Are All Afraid'*, Reuters (Apr. 17, 2025, 11:06 PM), https://tinyurl.com/2v4hu4hn; Melissa

14

Quinn, *Trump's Crusade Against Big Law Firms Sparks Fears of Long-Lasting Damage*, CBS News (Apr. 2, 2025, 3:20 PM), https://tinyurl.com/5c766bej.

Finally, Plaintiffs' concerns about prosecution for failure to register have been borne out, with this sample of federal charges in just one week illustrating what Defendants have promised will be a larger national trend. *See* Ex. H (criminal complaints); Ex. U (Cisneros Decl.). This harm is concrete and nonspeculative.

Because Plaintiffs' members have established standing on multiple grounds, because the interests that Plaintiffs seek to protect are germane to their missions, and because individual members need not participate in this lawsuit, Plaintiffs have shown standing sufficient to support an injunction of the IFR pending appeal. *See Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).

## B.    Plaintiff CHIRLA Has Established Organizational Standing

CHIRLA has shown injuries that impact its core programmatic work of providing legal services. For organizational standing, a plaintiff must face a "concrete and demonstrable injury to [its] activities that is more than "simply a setback to [its] abstract social interests." *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Here, unlike the cases relied upon by the district court, CHIRLA is not simply an advocacy and public education organization. *See* Ex. A (Mem. Order) 7-10 (citing *Food & Water Watch, Inc. v.*

15

*Vilsack*, 808 F.3d 905, 919-21 (D.C. Cir. 2015) (education and advocacy around poultry inspection), *All. for Hippocratic Med.*, 602 U.S. at 394 (advocacy around abortion drug), *Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C. Cir. 1995) (taxpayer education and advocacy)); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 23–24 (D.D.C. 2014) (advocacy organization asserting lobbying related expenditures).

Instead, CHIRLA has identified the following concrete harms to its core programmatic work: 1) at least 100 current clients it has already identified who appear required to register under the IFR, including 60 U visa applicants (those applying for immigration relief as victims of certain serious crimes), Ex. D (Salas Decl.) ¶¶ 18; 2. the need for legal staff to spend additional time—impacting their ability to provide legal representation in other ways—to review client files to determine the need to register, which will require filing a FOIA request for some cases, and the need to engage in separate consultations with clients about registering, *id.* ¶¶ 18, 20; 3) an increase in the volume of inquiries about registration through its hotline, evidenced in part by numerous calls inquiring about registration in anticipation of the IFR taking effect, *id.* ¶¶ 16-17; 4) a strain on its personnel and financial resources as a result of this increased volume of work arising from the IFR, *id.* ¶¶ 17-21; and 5) interference with existing grant deliverables that fund legal services for immigration benefits and removal

proceedings on a per case basis, *id.* ¶¶ 19; 11. Underscoring that such harm is not speculative, the government's own numbers in the IFR indicate that it will impact 2-3 million people. 90 Fed. Reg. at 11797.

Within this circuit, courts have held that similar injuries are sufficiently concrete and nonspeculative. *See Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 169-71 (D.D.C. 2021); *Nw. Immigr. Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 46-50 (D.D.C. 2020). Notably, an organization need not be entirely hamstrung to establish standing—its activities need only be "perceptibly impaired." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1100 (D.C. Cir. 2015) ("*PETA*") (quoting *Havens*, 455 U.S. at 379).

It is not the case that because CHIRLA describes its mission as ensuring the integration of immigrant communities into our society "with full rights and access to resources," Ex. D (Salas Decl.) ¶ 3, the IFR in some ways furthers its mission. *See* Ex. A (Mem. Order) 11. It is the government's action, not the organization's response to it, that is to be judged against the mission. *PETA*, 797 F.3d at 1095. Plainly, a regulation that puts millions of noncitizens in the crosshairs for immigration enforcement under pain of criminal prosecution does not further the mission of immigrant integration.

17

### C.     Defendants Have Violated the APA

The IFR plainly violates the APA. As the district court observed, the IFR represents a significant change in policy that alters the rights and interests of parties such "that the case law and the APA would require something more than what [Defendants have] done to implement this rule." Ex. B (Hrg. Tr.) 22:6-8; *see* Ex. A (Mem. Order) 2-4. The IFR violates the procedural requirements of the APA by foregoing notice and comment prior to implementation, because it is not merely an "internal house-keeping" procedural rule. *AFL-CIO v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987)). Instead, it represents a "substantive change in existing . . . policy" that imposes new burdens. *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014); *see Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982) (finding a rule changing a sixteen-year-old policy that imposes new burdens not to be procedural).

The IFR exposes the newly regulated to new criminal liability, because noncitizens who were ineligible to use any of the designated registration forms were under no enforceable obligation to register or to carry any proof of registration. *See* 8 U.S.C. § 1306(a) (making it a crime to "*willfully* fail[] or refuse[]" to register) (emphasis added); *United States v. Mendez-Lopez*, 528 F. Supp. 972, 974 (N.D. Okla. 1981) (dismissing criminal failure to carry proof of

18

registration card for noncitizen not able to register); *United States v. Claudio-Becerra*, No. PO 08-2305, 2008 WL 11451346, at *3 (D.N.M. Aug. 28, 2008) (dismissing failure to register charge for failure to establish defendant had "knowledge of his duty to apply for registration and be fingerprinted" and "deliberately failed or refused to apply for registration"); *see also Bryan v. United States*, 524 U.S. 184, 191–92 (1998) ("willful" conduct requires "a 'bad purpose'" and proof "that the defendant acted with knowledge that his conduct was unlawful") (cleaned up)). Rules that impose criminal sanctions "should be held to the strict letter of the APA." *United States v. Picciotto*, 875 F.2d 345, 346 (D.C. Cir. 1989).

The IFR also trenches on the Fifth Amendment rights of those required to register, who must report any uncharged criminal conduct in Form G-325R and who, by simply registering using a form targeting those who entered the country in violation of 8 U.S.C. §1325, are providing "a significant 'link in the chain' of evidence tending to establish [their] guilt." *Marchetti v. United States*, 390 U.S. 39, 48 (1968); *see Grosso v. United States*, 390 U.S. 62, 68 (1968). There is "ample reason to fear" that such a link would lead to prosecution. *Leary v. United States*, 395 U.S. 6, 16 (1969); *see supra* at 12.

The IFR similarly burdens the First Amendment rights, *see supra* at 13-14, and the privacy rights of those newly required to register, *see Elec. Priv. Info. Ctr.*

19

*v. U.S. Dep't of Homeland Sec.,* 653 F.3d 1, 6 (D.C. Cir. 2011) (finding a security screening method that resulted in a greater invasion of "personal privacy" constituted a "new substantive burden").

The IFR also violates the substantive requirements of the APA because it, *inter alia*: (a) fails to acknowledge or explain the change in 80-year-old policy, *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017); (b) fails to consider the Fifth and First Amendment implications of the new rule; (c) fails to address the evident barriers to accessing the online-only, English-only registration process for elderly, disabled, impoverished, or limited-English-proficient noncitizens; and (d) does not consider the needless burden placed on those who have pending or even granted applications for congressionally-authorized immigration relief, *see infra* at 21. Defendants' failure to consider these important factors was arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

## II.   PLAINTIFFS' HARM IS IRREPARABLE

Plaintiffs' harm described above is irreparable. Members of Plaintiff organizations who are directly regulated by the IFR do not speak English and have difficulty accessing the Internet, putting them at imminent risk of prosecution and detention for failure to register. *See* Ex. I ("Ana" Decl.) ¶¶ 5, 8; Ex. J ("Gloria" Decl.) ¶¶ 7, 9. For individuals like CHIRLA member Ursela and MRNY member

Guvelia, who have pending immigration applications under congressionally authorized forms of relief, the IFR's registration requirement causes irreparable harm because those applications do not count as registration documents or evidence of registration, *see* 90 Fed. Reg. at 11794-95, and these members now must undergo the separate G-325R process to register and provide far more information to the government. Ex. L ("Ursela" Decl.) ¶ 4; Ex. N ("Guvelia" Decl.) ¶ 9. In the case of Guvelia, who has applied for a U visa as a victim of crime, and CHIRLA member Tiana, who has begun the process of self-petitioning under the Violence Against Women Act (VAWA), the G325-R process contains none of the statutory confidentiality protections that U visa and VAWA submission provide. *See* Ex. N ("Guvelia" Decl.) ¶ 9; Ex. M ("Tiana" Decl.) ¶ 5; 8 U.S.C. §1367. These members thus face irreparable harm from the IFR's requirement to provide personal information that Defendants explicitly intend to use for immigration enforcement, while these individuals are awaiting Congressionally authorized forms of immigration relief.

In addition, as discussed above, members of Plaintiff organizations are irreparably harmed because the registration requirement including its disclosure of First Amendment protected activity would deter a person of "ordinary firmness" from exercising their First Amendment rights. The IFR's requirement that members such as Ursela admit to the crime of improper entry under 8 U.S.C. §1325 is also

an irreparable harm. Federal criminal prosecutions for failure to register under 8
U.S.C. §1304 have begun, underscoring the irreparable nature of that harm. *See*
Ex. U (Cisneros Decl.); Ex. H (Criminal Complaints). Finally, harm to CHIRLA as
an organization is irreparable because the IFR is already impacting its core
programmatic work in a manner that, among other injuries, threatens its current
grant deliverables. *See Cath. Legal Immigr. Network*, 513 F. Supp. 3d at 176; *Nw.
Immigr. Rts. Project*, 496 F. Supp. 3d at 80.

## III.    THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES TIP IN PLAINTIFFS' FAVOR

The balance of equities tips in Plaintiffs' favor and the public interest favors
an injunction. "[I]t has been well established in this Circuit that '[t]he public
interest is served when administrative agencies comply with their obligations under
the APA.'" *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 35
(D.D.C. 2021) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C.
2015)) (collecting cases). Until three weeks ago, the government had not enforced
a universal registration requirement and attendant criminal penalties since the mid-
20th century. Given that longstanding state of affairs, the balance of equities favors
"a preliminary injunction that serves only to preserve the relative positions of the
parties until a trial on the merits can be held." *Texas Child.'s Hosp. v. Burwell*, 76
F. Supp. 3d 224, 245 (D.D.C. 2014) (quoting *Camenisch,* 451 U.S. at 396).

## CONCLUSION

Plaintiffs respectfully request that the Court enter a stay or, in the alternative, an injunction pending appeal.

Dated: May 2, 2025

Respectfully submitted,

/s/ Michelle Lapointe

Lynn Damiano Pearson\*\*
Cassandra Charles\*\*
Joanna Cuevas Ingram\*\*
National Immigration Law Center
P.O. Box 34573
Washington, D.C. 20043
Tel: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

Michelle Lapointe (Bar No. 54940)
Emma Winger\*
Leslie K. Dellon (Bar No. 27795)
Chris Opila\*
American Immigration Council
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

Jennifer R. Coberly (Bar No. 63914)
American Immigration Lawyers
Association
1331 G. St. NW
Washington, DC 20005
Tel: (202) 507-7692
Jcoberly@AILA.org

Cody Wofsy (Bar No. 61550)
American Civil Liberties Union
Foundation,
Immigrants' Rights Project
425 California St, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
cwofsy@aclu.org

Nicholas Katz\*\*
CASA, Inc.
8151 15th Avenue
Hyattsville, MD 20783
Tel: (240) 491-5743
nkatz@wearecasa.org

Anthony Enriquez (Bar No. 66138)
Sarah T. Gillman (Bar No. 61974)
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
(917) 284-6355

23

enriquez@rfkhumanrights.org
gillman@rfkhumanrights.org

Sarah E. Decker**
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432
decker@rfkhumanights.org

*\* Application for admission pending*
*\*\* Application for admission forthcoming*

## <u>CERTIFICATE OF PARTIES AND AMICI CURIAE AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 27(a)(4) and 28(a)(1)(A), Plaintiffs-Appellants certify that the following parties appeared before the district court or this Court:

1. Coalition for Humane Immigrant Rights, *Plaintiff-Appellant*

2. United Farm Workers of America, *Plaintiff-Appellant*

3. CASA, Inc., *Plaintiff-Appellant*

4. Make the Road New York, *Plaintiff-Appellant*

5. U.S. Department of Homeland Security, *Defendant-Appellee*

6. Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, *Defendant-Appellee*

7. U.S. Citizenship and Immigration Services, *Defendant-Appellee*

8. Kika Scott, in her official capacity as Senior Official Performing the Duties of the Director, *Defendant-Appellee*

9. U.S. Immigration and Customs Enforcement, *Defendant-Appellee*

10. Todd Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, *Defendant-Appellee*

11. U.S. Customs and Border Protection, *Defendant-Appellee*

12. Pete R. Flores, in his official capacity as Acting Commissioner, U.S. Customs and Border Protection, *Defendant-Appellee*

13. U.S. Department of Justice, *Defendant-Appellee*

14. Pamela Bondi, in her official capacity as Attorney General, *Defendant-Appellee*

No amici or intervenors appeared before the district court or this Court.

Plaintiffs-Appellants further state that none of the aforementioned Plaintiffs has any parent companies, subsidiaries, or affiliates owning outstanding securities in the hands of the public.


Dated: May 2, 2025                    */s/ Michelle Lapointe*
                                      Michelle Lapointe
                                      American Immigration Council

                                      *Attorney for Plaintiffs-Appellants*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 27 and Circuit Rule 27, Plaintiffs-Appellants certify:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,193 words, excluding those parts exempted by Fed. R. App. P. 32(f) and 27(a)(2)(B).

2. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(1)(E), 32(a)(5) and 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft Office 365.

Dated: May 2, 2025                          */s/ Michelle Lapointe*
                                            Michelle Lapointe
                                            American Immigration Council

                                            *Attorney for Plaintiffs-Appellants*

27

## <u>CERTIFICATE OF SERVICE</u>

Plaintiffs-Appellants certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on May 2, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: May 2, 2025

*/s/ Michelle Lapointe*
Michelle Lapointe
American Immigration Council

*Attorney for Plaintiffs-Appellants*

28