UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-5152
(C.A. No. 25-0943)

COALITION FOR HUMANE
IMMIGRANT RIGHTS, *et al.*                                    Appellants,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,                                          Appellees.

## APPELLEES' OPPOSITION TO STAY OR INJUNCTION PENDING APPEAL

Defendants-Appellees hereby oppose Plaintiffs-Appellants' motion for a stay or injunction pending appeal ("Mtn. for Stay," Doc. No. 2114110). Appellants have failed to satisfy the requirements of Federal Rule of Appellate Procedure ("Rule") 8 and have failed to meet the stringent standards required for the injunction they seek.

## INTRODUCTION

On March 12, 2025, the United States Department of Homeland Security ("DHS") published an Interim Final Rule ("IFR") which simply added a new registration form to a long list of currently acceptable forms for aliens to submit to comply with longstanding statutory registration and fingerprinting requirements. 90 Fed. Reg. 11793 (Mar. 12, 2025).

In the district court, Appellants moved for emergency relief under the Administrative Procedure Act ("APA"), seeking a stay of the effective date of the IFR or, in the alternative, to enjoin the IFR. After the parties briefed the matter and the district court heard argument on the issues, the district court denied the motion for emergency relief, finding that Appellants lacked standing to pursue their claims. *See* Mem. Order at 6-20 ("Mem. Order," Ex. A to Mtn. for Stay). Specifically, the district court determined that Appellants could not establish either associational or organizational standing; the district court did not reach the other elements of the injunction analysis. *Id.*

Appellants noticed an appeal from the district court's decision, and then moved for an injunction pending appeal before the district court. Mtn. for Stay at 5-6. Rather than wait for the district court to rule, however, Appellants prematurely filed the present motion before this Court, in violation of Rule 8(a)(2)(A). Independently, the Motion for Stay fails to meet the stringent standards for injunctive relief, as Appellants cannot establish that they are likely to succeed on the merits or that the balance of equities and public interest favor an injunction.

## STATEMENT OF FACTS

The Immigration and Nationality Act ("INA") has long contained statutory requirements for every alien in the United States to register their presence. 8 U.S.C. §§ 1301-1306. These registration requirements were incorporated from the Alien Registration Act of 1940 and predate the INA. *See* Public Law 76-670, 54 Stat. 670.

On January 25, 2025, President Trump issued an Executive Order directing the Secretary of Homeland Security, in coordination with the Attorney General and the Secretary of State, to "(a) Immediately announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of [the registration statutes]; (b) Ensure that all previously unregistered aliens in the United States comply with the requirements of [the registration statutes]; and (c) Ensure that failure to comply with the legal obligations of [the registration statutes] is treated as a civil and criminal enforcement priority." Exec. Order No. 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed. Reg. 8443, 8444 (Jan. 29, 2025). On March 12, 2025, DHS published the IFR to allow for the use of a newly created Form G-325R, Biographic

Information (Registration) ("G-325R") as a means of registration, and USCIS Proof of Alien G-325R Registration as evidence of registration. *See* 90 Fed. Reg. 11793, 11795-11796, 11800.

While the Form G-325R has been added to the registration scheme, the registration scheme itself is not new. One of the many available manners through which aliens can register is through the visa issuance process. 8 U.S.C. § 1201(b); 8 U.S.C. § 1301. All aliens 14 years of age or older who remain in the United States 30 days or longer and have not been registered or fingerprinted as part of their visa issuance under § 1201(b) must register and be fingerprinted. 8 U.S.C. § 1302.

The Secretary of Homeland Security is directed by statute to "prepare forms for the registration and fingerprinting of aliens," which "shall contain inquiries with respect to (1) the date and place of entry of the alien into the United States; (2) activities in which he has been and intends to be engaged; (3) the length of time he expects to remain in the United States; (4) the police and criminal record, if any, of such alien; and (5) such additional matters as may be prescribed." 8 U.S.C. § 1304(a). The Secretary also has authority to prescribe "special regulations and forms for the registration and fingerprinting of" certain

4

classes of aliens, including "aliens of any other class not lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1303(a); *see also Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) (recognizing the use of authority under 1303(a) to require special registration for post-secondary student from Iran).

There are statutory criminal penalties related to registration. Willful failure to register or to be fingerprinted is punishable by a fine of up to $5,000 and imprisonment up to six months. 8 U.S.C. § 1306(a); *see also* 18 U.S.C. § 3571. If someone files a registration application "containing statements known by him to be false, or . . . procures or attempts to procure registration of himself or through another person by fraud," he may be punished by a fine of up to $5,000 and imprisoned up to six months. 8 U.S.C. § 1306(c); *see also* 18 U.S.C. §§ 1001, 1546. Aliens who have been registered and fingerprinted are to "be issued a certificate of alien registration or an alien registration receipt card." 8 U.S.C. § 1304(d). Aliens 18 years of age and over must carry and be in possession of their alien registration or registration receipt card. 8 U.S.C. § 1304(e). Noncompliance is a misdemeanor punishable by a fine of up to $5,000 and imprisonment for not more than thirty days. 8

U.S.C. § 1304(e); 18 U.S.C. §§ 3559(a)(8), 3571(b)(6).  Finally, each alien required to be registered under the INA must notify DHS in writing of each address changes within ten days.  8 U.S.C. § 1305(a); 8 C.F.R. § 265.1.  Noncompliance is a misdemeanor punishable by a fine of up to $5,000 and imprisonment for not more than thirty days. 8 U.S.C. §1306(b); 18 U.S.C. §§ 3559(a)(8), 3571(b)(6).  In addition, failure to comply with the change-of-address notification requirements of 8 U.S.C. §1305 is a ground of removability unless the alien establishes that such failure was reasonably excusable or was not willful.  *See* 8 U.S.C. § 1227(a)(3)(A).

The regulations currently designate 11 different immigration forms as registration forms.  8 C.F.R. § 264.1(a).  Examples include an I-94, Arrival-Departure Record; an I-485, Application to Register Permanent Residence or Adjust Status; and an I-95, Crewmen's Landing Permit.  *Id*.  There are 12 items that are evidence of registration. 8 C.F.R. § 264.1(b).  Examples include an I-94, Arrival-Departure Record; an I-551, Permanent Residence Card; an I-766, Employment Authorization Document; or an I-862, Notice to Appear, issued to an alien at the initiation of removal proceedings.  *Id*.  The IFR allows for

the submission of a Form G-325R as a means to register under 8 C.F.R. § 264.1(a) and the USCIS Proof of Alien G-325R Registration as evidence of registration under 8 C.F.R. § 264.1(b).

In sum, aliens have been required to register with the federal government since 1940, and those requirements have remained in the law ever since. *See* 8 U.S.C. §§ 1301-1306. And although the implementing regulations have varied over time—and have not consistently provided a registration form applicable to all aliens—the underlying statutory requirements have remained unchanged for over eighty years. *See* Mem. Order at 3-4.

Plaintiffs filed suit to block the implementation of the IFR and the use of Form G-325R as a means of registration. After briefing, the district court concluded that Plaintiffs had not demonstrated standing and, as such, had not proven a likelihood of success on the merits. *See generally* Mem. Order. Although the parties briefed the remaining three prongs of the preliminary injunction analysis—irreparable harm, balance of the equities, and public interest—the district court did not reach those arguments as it found the lack of standing to be dispositive. *Id.*

## STANDARD OF REVIEW

An appellant seeking an injunction pending appeal must meet "stringent standards" to obtain relief.  *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2014).  The four-factor analysis applicable to preliminary injunctions also applies to injunctions pending appeal:  the likelihood of success on the merits, the possibility of irreparable harm, the balance of the equities, and the public interest.  *Id.*  Where, as here, appellants seek an injunction pending appeal of a denial of a preliminary injunction in the district court, they face "the difficult task of coming forward with evidence and argument showing that it is likely that the district court abused its discretion in denying a preliminary injunction."  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (cleaned up, citations omitted).

Before seeking a stay pending appeal in the circuit, appellants must first seek a stay from the district court and fail to obtain relief, or they must demonstrate that it would have been impracticable to do so. Fed. R. App. P. 8(a)(2)(A).  Where an appellant fails to make that

8

showing, this Circuit routinely denies such motions. *See, e.g.*, *Powder River Basin Res. Council v. Dep't of Interior*, No. 24-5268, 2025 WL 312649, \*1 (D.C. Cir. Jan. 24, 2025); *Carter v. United States*, No. 03-5067, 2003 WL 21659644, \*1 (D.C. Cir. July 10, 2003).

## ARGUMENT

### I.    Appellants' Motion Is Premature

As Appellants concede (Mtn. for Stay at 5-6), they filed the present motion before the district court had the opportunity to rule on a motion for injunction pending appeal. While the district court declined to expedite the briefing and hearing on that motion, it did not deny the motion, nor did it indicate that Appellants could not receive the relief they requested. *See* Ex. C to Mtn. for Stay. Appellants have therefore failed to satisfy the requirements of Rule 8(a)(2)(A)(i). Appellants offer no argument or reasoning why the district court's order setting a briefing schedule—indicating that it would fully consider Appellants' arguments—equates to a denial of relief. This Court can therefore deny the Motion for Stay on these procedural grounds as premature. *See Powder River*, 2025 WL 312649, at \*1; *Carter*, 2003 WL 21659644, at \*1.

## II.   Appellants Are Unlikely to Succeed on the Merits

Appellants are unlikely to succeed on the merits of their appeal, because they lack standing and because the IFR does not violate the APA.  Additionally, at this stage of the litigation, where Appellants seek the extraordinary relief of an injunction pending appeal, this Court applies an "abuse of discretion" standard to the question of success: Appellants must show that it is likely that the district court abused its discretion in denying the preliminary injunction and determining that Appellants lacked standing.  *John Doe Co.*, 849 F.3d at 1131.  And the analysis of likelihood of success is a "stringent requirement[.]" *Archdiocese of Wash. v. WMATA*, 877 F.3d 1066, 1066 (D.C. Cir. 2017) (per curiam).

### A. Appellants Lack Standing to Pursue Their Claims

Appellants challenge the IFR and assert claims on behalf of a broad segment of the immigrant population, both legal and undocumented, despite not being directly subject to the IFR themselves. As such, Plaintiffs have failed to establish either organizational or associational standing.  *See* Mem. Order at 6-20.  Appellants must now

10

demonstrate that the district court abused its discretion in reaching that conclusion.

1. Organizational Standing

The district court determined that Plaintiff CHIRLA had not established organizational standing, both because the asserted injuries were speculative and because the IFR had not impaired CHIRLA's mission, but rather merely fueled an expansion of CHIRLA's operations. Mem. Order at 7-10. In the Motion for Stay, CHIRLA doubles down on its assertion that the already identified "harms"—assisting undocumented aliens with completing the Form G-325R, answering questions about the registration process, and providing legal representation for clients in connection with alien registration—impede its mission. Mtn. for Stay at 15-17. But CHIRLA's mission, by its own description, is "ensuring that immigrant communities are fully integrated" and serving as a "first point of contact for individuals seeking information about recent policy changes impacting immigrants." *See* Mem. Order at 11-12 (citations omitted). The "harms" CHIRLA identifies are merely an expansion of those core functions: assisting aliens in meeting their legal obligations to register and answering

questions about registration fall directly within CHIRLA's mission; they are not an impediment to that mission as CHIRLA claims. *Cf. PETA v. Dep't of Agric.*, 797 F.3d 1087, 1094-95 (D.C. Cir. 2015) (finding that government action which blocks the organization's mission can give rise to standing). Under the most generous reading of CHIRLA's argument, CHIRLA at best has chosen to "rearrange some labor and resources to meet the increased demand from this unexpected policy." Mem. Order at 12. This is not a concrete injury sufficient to support organizational standing. *Id.* (citing *Env't Working Group v. FDA*, 301 F. Supp. 3d 165, 170 (D.D.C. 2018)). Certainly, it is not an abuse of discretion for the district court to have so found.

Again, the IFR does not change the long-standing requirement for aliens to register, codified in federal law for over eighty years; the mere introduction of a new avenue of registration for which CHIRLA now provides education, resources, and advice is not an impediment to its mission. CHIRLA has failed to establish organizational standing.

2. <u>Associational Standing</u>

Appellants also lack associational standing because no individual member has independent standing to challenge the IFR. In reaching

this conclusion, the district court based its decision in part on a determination that that the use of pseudonymous hearsay—and double-hearsay—affidavits and the "mere requirement to abide by the law" did not suffice to establish a concrete injury. Mem. Order at 13-15. In response, Appellants first offer additional pseudonymous double-hearsay declarations (Mtn. for Stay, Exs. I-T) and again insist that they suffice to establish harm. Appellants cite to additional cases in support of this approach, but none of these cases actually decided the question of whether pseudonymous declarations could suffice, but rather assumed the declarations were sufficient, apparently for the lack of any opposition. *See Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 32 (D.D.C. 2019) (accepting pseudonymous declarations without any indication of opposition from the opposing party and without addressing the questions of hearsay and credibility); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018) (accepting pseudonymous declarations and noting that "the government does not seriously dispute" the declarations). More importantly, the question of whether or not to accept a certain type of evidence is soundly within the district court's discretion, and the existence of conflicting case law on the appropriateness of

pseudonymous and hearsay declarations means that the district court did not abuse its discretion in deciding not to accept such declarations. *See, e.g.*, *Young America's Foundation v. Gates*, 560 F. Supp. 2d 39, 50 (D.D.C. 2008) (highlighting "certain difficulties" in basing associational standing on anonymous declarations); *Doe v. Von Eschenbach*, Civ. A. No. 06-2131 (RMC), 2007 WL 1848013, at *3 (D.D.C. June 27, 2007) (finding it "impossible [] to litigate standing" with a pseudonym).

But even leaving this evidentiary question aside, Appellants offer no further basis from which this Court can now find the existence of a concrete injury. Appellants reiterate (Mtn. for Stay at 7, 9-10) their insistence that they are "directly regulated parties" because their members must now submit the Form G-325R and carry proof of registration, but both the requirement to register and the requirement to carry proof of registration are not new. *See* 8 U.S.C. §§ 1301-1306. As the district court correctly determined, the "injury" of which Appellants complain is nothing more than "the mere requirement to abide by the law" which does not suffice for standing. Mem. Order at 14-15.

Appellants' attempt to distinguish *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is unavailing because Appellants make no effort to

grapple with the central holding from that case: that the harm alleged "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 440; *see also Doe 1 v. Apple Inc.*, 96 F.4th 403, 410-11 (D.C. Cir. 2024) (applying the *TransUnion* standard of "a close historical or common-law analogue for [the] asserted injury" in analyzing standing). Instead, Appellants merely reassert the conclusory opinion that their members are subject to a concrete harm and the incorrect assertion that "the IFR directly imposes a series of new legal obligations." Mtn. for Stay at 10-11. But the actual harm at issue here is the "harm" of complying with the INA's statutory requirements which have been in place for nearly a century. There is no historical analogue for the harm of compliance with the law.

Similarly, Appellants explicitly disclaim that they are bringing constitutional claims and that they must therefore meet the more stringent requirements of pre-enforcement challenge standing (Mtn. for Stay at 12-15), but in the same breath insist that their standing is based upon the alleged First and Fifth Amendment impact of the IFR (Mtn. for Stay at 13-14). But none of these connects the long-standing statutory requirement of registration and the IFR's creation of a new means by

15

which an alien can comply with that statute with a "harm traditionally recognized" merely by complying with that statute. *Cf. TransUnion*, 594 U.S. at 440.

Appellants lack standing, as the district court correctly determined. None of the arguments made in the Motion for Stay establish any abuse of discretion in the district court's determination, nor do those arguments meet the "stringent requirements" of demonstrating a likelihood of success.

## B. The Notice and Comment Requirement Does Not Apply

Appellants' assertion that the IFR violates the APA, while not reached by the district court, fares no better in the analysis of whether they are likely to succeed on the merits.

The APA specifically exempts from its notice and comment requirements, as relevant here, "rules of agency organization procedure, or practice." 5 U.S.C. § 553(b)(A); *see AFL-CIO v. NLRB*, 57 F.4th 1023, 1034-35 (D.C. Cir. 2023). Procedural rules are ones that are "primarily directed toward improving the efficient and effective operations of an agency." *AFL-CIO*, 57 F.4th at 1034 (cleaned up). A "'critical feature' of the procedural exception 'is that it covers agency actions that do not

16

themselves alter the rights or interests of parties, although it may alter *the manner in which the parties present themselves* or their viewpoints to the agency.'" *JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)) (emphasis added). Moreover, although a procedural rule generally may not "encode[] a substantive value judgment or put[] a stamp of approval or disapproval on a given type of behavior," *American Hospital Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C.Cir.1987), "the fact that the agency's decision was based on a value judgment about procedural efficiency does not convert the resulting rule into a substantive one." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000).

The statutory registration obligation has existed for more than eighty years, and the IFR merely provides a new means by which an alien can comply with that requirement; in other words, an alteration to "the manner in which [aliens] present themselves" to DHS. *See JEM Broad. Co.*, 22 F.3d at 326. The IFR does not affect individuals' substantive interests or encode any value judgments about their behavior. *See AFL-CIO*, 57 F.4th at 1042 (concluding that a provision was not a procedural rule "because it encodes a substantive value

judgment about the type of [union election] observers that best serve"
the agency's own policy goals) (cleaned up); *JEM Broad Co.*, 22 F.3d at
326 ("The issue . . . is one of degree, and our task is to identify which
substantive effects are sufficiently grave so that notice and comment are
needed to safeguard the policies of the APA") (cleaned up). Nor does the
IFR establish any sort of new substantive policy but is instead nothing
more than an improvement in the agency's own procedures, intended to
"improve registration outcomes" for different groups of aliens by
"add[ing] another method . . . for compliance with existing statutory
registration requirements." 90 Fed. Reg. at 11796; *see id.* at 11797
("This rule fills a gap in registration by adding an online option to comply
with existing statutory registration requirements.").[1]

---

[1] Indeed, excepting this IFR from notice and comment rulemaking
is not an anomaly in the history of 264.1. In fact, the history of the
regulation is replete with similar additions of documents. *See* 82 Fed.
Reg. 94231-01, 94233 (Dec. 23, 2016) (removing NSEERS based on
exception to notice and comment as "impracticable, unnecessary or
contrary to the public interest."); 78 Fed. Reg. 18457-01 (Mar. 27, 2013)
(adding a valid, unexpired nonimmigrant DHS admission or parole
stamp in a foreign passport as evidence of registration based on
exception for "rules of agency organization, procedure, or practice");
39 Fed. Reg. 10885 (March 22, 1974) (adding form I-221S (Order to Show

Thus, because the IFR merely improves existing agency processes to make available an additional method to register, the IFR is primarily directed toward the manner by which aliens "present themselves or their viewpoints to the agency." *Glickman*, 229 F.3d at 280; *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 5 (D.C. Cir. 2011) (even "a rule with a 'substantial impact' upon the persons subject to it is not necessarily a substantive rule" (citing *Pub. Citizen*, 276 F.3d at 640-41)); *Lamoille Valley R. Co. v. I.C.C.*, 711 F.2d 295, 328 (D.C. Cir. 1983) (holding that an order changing the schedule for an adjudication, including when parties were to submit briefing, was a procedural rule);

------

Cause, Notice of Hearing, and Warrant for Arrest of Alien) to § 264.1(b) without notice and comment as "adding a form to the listings"); 35 Fed. Reg. 12268 (July 31, 1970) (adding Form I-485A (Application by Cuban Refugee for Permanent Residence to § 264.1(a) without notice and comment as "relat[ng] to agency procedure."); 30 Fed. Reg. 13862 (Nov. 2, 1965) (amending listing of Forms I-90 (Application by Lawful Permanent Resident Alien for Alien Register Receipt) and I-102 (Application by Nonimmigration alien for Replacement of Arrival Document or for Alien Registration) under Section § 264.1(b) without notice and comment as "relat[ing] to agency procedure"); 26 Fed. Reg. 3455 (April 22, 1961) (waived fingerprinting without notice and comment because the amendment "relieve[s] restrictions and confer[s] benefits upon persons affected thereby."); 25 Fed. Reg. 10495 (Nov. 2, 1960) (added the Form I-590 (Registration for Classification as Refugee-Escapee) to § 264.1 without notice and comment as "relat[ing] to agency procedure and management.").

*Ranger v. FCC*, 294 F.2d 240, 244 (D.C. Cir. 1961) (while holding that a rule was procedural, noting that "no substantive rights were actually involved by the regulation itself" even if "failure to observe it might cause the loss of substantive rights"). Moreover, because the IFR simply offers an additional option to comply with a pre-existing statutory duty, the IFR lacks a "substantive effect[] sufficiently grave so that notice and comment are needed to safeguard the policies of the APA." *JEM Broad Co.*, 22 F.3d at 326.

Accordingly, the IFR does not violate the notice and comment requirement, and Appellants are unlikely to succeed on the merits.

**C. The IFR is not Arbitrary or Capricious.**

The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency need only articulate "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation and citation omitted). The agency appropriately relies on its experience in exercising its judgment. *See id.* at 29 ("It is

20

not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion."). Thus, a reviewing court's task is only to determine whether an agency has engaged in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal citation and quotation marks omitted); *see Prometheus Radio Project*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision").

The IFR easily meets that deferential standard. The IFR was promulgated to provide an additional registration pathway for aliens required to register under the existing statutory framework prescribed in 8 U.S.C. §§ 1301–1306. 90 Fed. Reg. at 11795. It also serves to partially implement section 7 of Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 FR 8443 (Jan. 29, 2025). 90 Fed. Reg. at 11795. Section 7 directs the Secretary, among other matters, to ensure that all previously unregistered aliens in the

United States comply with 8 U.S.C. §§ 1301-1306.  90 Fed. Reg. at 11795.

The IFR is reasonably related to these objectives.

Under 8 U.S.C. § 1302(a), "every alien" 14 years of age or older who remains in the United States for thirty days or longer is subject to registration if not already registered.  Although 8 C.F.R. § 264.1(a) provides forms that satisfy an alien's registration requirements and means of showing evidence of registration, not all aliens who are subject to the registration requirements have a straightforward way to take advantage of those forms.  For example, in some cases, the acceptable evidence of registration at 8 C.F.R. § 264.1(b) is the result of an approved application only, which may leave denied or pending applicants without any acceptable evidence that they have complied with the requirement to register.  The IFR provides a convenient additional method to comply with statutory registration requirements by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed.

An alien's willful failure or refusal to apply to register or to be fingerprinted is punishable by a fine of up to $5,000 or imprisonment for up to six months, or both.  8 U.S.C. 1306(a); *see also* 18 U.S.C. 3571.  The

22

same applies to an alien's parent or legal guardian's willful failure or refusal to register. *Id*. The IFR simply provides an additional mechanism for aliens to comply with registration requirements. The IFR does not impose any new registration or fingerprinting obligations separate from the current statutory obligations. An alien who has previously registered consistent with 8 C.F.R. § 264.1(a), or an alien who has evidence of registration consistent with 8 C.F.R. § 264.1(b), need not register again, although such an alien is subject to ongoing change of address reporting requirements under 8 U.S.C. § 1305(a) and 8 C.F.R. § 265.1.

Because the IFR is rationally connected with providing a registration pathway for compliance with the law, it is not arbitrary or capricious. Appellants are therefore unlikely to succeed on the merits.

## III. The Balance of Equities and the Public Interest Favor Defendants

As established above, Appellants lack standing and are unlikely to succeed on the merits. They are also unable to establish the last two prongs: the balance of equities and the public interest. *See Winter*, 555 U.S. at 20. And where, as here, Appellants are unlikely to succeed on the merits, it is of particular importance that the other three

factors favor the Appellants; after all, "courts must take care not to unnecessarily 'halt the functions of a coordinate branch.'" *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975)). Appellants must specifically establish that these last two factors favor the Appellants decisively; "where balancing the equities 'results roughly in a draw,' the 'sound disposition' of a request for injunctive relief 'depends on a reflective and attentive appraisal as to the outcome on the merits.'" *Republican Nat'l Comm. v. Pelosi*, Civ. A. No. 22-659 (TJK), 2022 WL 1604670, at *5 (D.D.C. May 20, 2022) (quoting *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998)). As already shown above, Appellants are unlikely to succeed on the merits; "the sound disposition is to deny the motion" for an injunction. *Id.*

Here, the effect of an injunction would be to bar the Government from enforcing the immigration statutes which have been in place for over eighty years, essentially blocking the administration of the laws by the Executive and going against the public interest. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."

24

*Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). While Appellants may be correct that the statutory registration requirement has not been consistently enforced over that time, this does not provide a basis on which the enforcement of those laws can now be estopped. "An administrative agency charged with protecting the public interest is not precluded from taking appropriate action [because of] lack of action on the part of public officials." *Washington Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F. Supp. 877, 882 (D.D.C. 1992) (quoting *Pacific Shrimp Co. v. United States*, 375 F. Supp. 1036, 1042 (W.D. Wash. 1974)). "Plaintiffs may well have been allowed" to violate the laws "for many years," but the "government cannot be estopped from fulfilling its duty to protect the public interest. . . ." *Id.* There is undeniably a strong public interest in the enforcement of statutes enacted by Congress, and there is a concomitant equitable harm associated with "halt[ing] the functions of a coordinate branch" of government, as would be the result here. *See Trump*, 20 F.4th at 48. Whatever interests and equities Appellants can bring to bear on this analysis, they cannot outweigh these strong public interest factors, let alone do so decisively.

25

The final two factors favored the Government in the initial analysis; they favor the Government even more strongly now that Appellants seek an injunction pending appeal. The "sound disposition" is to deny to the motion.

*    *    *

## CONCLUSION

The Court should deny the motion for an injunction pending appeal.

JEANINE FERRIS PIRRO
United States Attorney
JANE M. LYONS
Assistant United States Attorney

*/s/ Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1790
kartik.venguswamy@usdoj.gov

*Attorneys for the United States of America*

27

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that foregoing complies with Federal Rule of Appellate Procedure 27(d)(2)(C), in that it contains 5067 words, is in fourteen-point font and utilizes Century Schoolbook typeface.

*/s/ Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
Assistant United States Attorney


## **CERTIFICATE OF SERVICE**

I certify that on this 22nd day of May 2025, the foregoing has been served on Appellants through the Court's CM/ECF system.

*/s/ Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
Assistant United States Attorney