No. 25-5152
_____

# In the United States Court of Appeals for the District of Columbia
_____

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs – Appellants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants – Appellees*,
_____

**PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF MOTION FOR STAY OR, IN THE ALTERNATIVE, INJUNCTION PENDING APPEAL**
_____

Lynn Damiano Pearson
Cassandra Charles
Joanna Cuevas Ingram
National Immigration Law Center
P.O. Box 34573
Washington, D.C. 20043
Tel: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

Michelle Lapointe
Emma Winger
Leslie K. Dellon
Chris Opila
American Immigration Council
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

*Counsel for Plaintiffs – Appellants*
(Additional counsel listed on signature block)

# **TABLE OF CONTENTS**

I. PLAINTIFFS COMPLIED WITH RULE 8 ................................................................. 2

II. PLAINTIFFS HAVE ESTABLISHED STANDING ...................................... 2

III. THE IFR VIOLATES THE APA ................................................................... 7

IV. THE IRREPARABLE INJURIES AND THE EQUITIES FAVOR AN INJUNCTION ................................................................................................ 10

CONCLUSION ..................................................................................................... 11

CERTIFICATE OF COMPLIANCE .................................................................... 13

CERTIFICATE OF SERVICE .............................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*A. A. R. P. v. Trump*, No. 24A1007, 24-1177,
  2025 WL 1417281 (U.S. May 16, 2025) ...............................................................4

*AFL-CIO v. NLRB*, 57 F.4th 1023 (D.C. Cir. 2023)......................................................8

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020)....................................................2

*Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037 (D.C. Cir. 1987) ......................................8

*Am. Wild Horse Pres. Campaign v. Perdue,* 873 F.3d 914 (D.C. Cir. 2017)...........10

*City of Clarksville v. FERC*, 888 F.3d 477 (D.C. Cir. 2018) .......................................3

*Doe v. Von Eschenbach*, Civ. A. No. 06-2131 (RMC),
  2007 WL 1848013 (D.D.C. June 27, 2007 .........................................................5

*Electronic Privacy Information Center v. U.S. Department of Homeland Security*
  653 F.3d 1 (D.C. Cir. 2011)..................................................................................9

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024).................3

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .............................................6

*James V. Hurson Assocs. v. Glickman*, 229 F.3d 277 (D.C. Cir. 2000) .....................8

*JEM Broad Co., Inc. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994)........................................8

*Lamoille Valley R.R. Co. v. I.C.C.*, 711 F.2d 295 (D.C. Cir. 1983)............................8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)..........................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)..............................................................................................10

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018).............................................5

*PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015) .................................6

*Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002) ..................................8

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...........................................11

*Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10 (D.D.C. 2021) .......11

*Ranger v. FCC*, 294 F.2d 240 (D.C. Cir. 1961) .........................................................9

*State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015)..........................3

*Tanner-Brown v. Haaland*, 105 F.4th 437 (D.C. Cir. 2024)........................................3

*Texas Child.'s Hosp. v. Burwell*, 76 F. Supp. 3d 224 (D.D.C. 2014) ........................11

*United States v. Cain*, 583 F.3d 408 (6th Cir. 2009) ....................................................7

*United States v. Mendez-Lopez*, 528 F. Supp. 972 (N.D. Okla. 1981).......................7

*Young America's Foundation v. Gates*, 560 F. Supp. 2d 39 (D.D.C. 2008)...............5

**Rules**

Fed. R. App. P. 8(a)(2)(A)(ii) ........................................................................................2

**Regulations**

17 Fed. Reg. 9989-01 (Nov. 6, 1952) ............................................................................9

25 Fed. Reg. 10495 (Nov. 2, 1960) ...............................................................................9

26 Fed. Reg. 3455 (April 22, 1961) ..............................................................................9

30 Fed. Reg. 13862 (Nov.2, 1965) ................................................................................9

35 Fed. Reg. 12268 (July 31, 1970)...............................................................................9

39 Fed. Reg. 10885 (March 22, 1974)...........................................................................9

58 Fed. Reg. 31000 (May 28, 1993) ..............................................................................9

67 Fed. Reg. 40581-01 (June 13, 2002).........................................................................9

78 Fed. Reg. 18457-01 (Mar. 27, 2013).........................................................................9

82 Fed. Reg. 94231-01 (Dec. 23, 2016).........................................................................9

90 Fed. Reg. 11793 (Mar. 12, 2025) ..............................................................................7

**Other Authorities**

Jeremy Roebuck & Marianne LeVine, *Migrants Criminally Charged after Failing to Register with U.S. Government*, Wash. Post (May 31, 2025), https://www.washingtonpost.com/immigration/2025/05/31/trump-immigrants-registry-doj-justice/ ................................................................................................10

# REPLY IN SUPPORT OF MOTION FOR STAY OR, IN THE ALTERNATIVE, INJUNCTION PENDING APPEAL

The core of Defendants' response—repeated throughout their opposition—is that the Interim Final Rule (IFR) changed nothing because the statute already required registration. It is their primary argument against standing (even though success on the merits must be assumed for that inquiry). It is their only defense to the Administrative Procedure Act (APA) claims. And it permeates all their other positions.

But it is patently wrong. The district court recognized, even as it denied an injunction, that the IFR represents a massive change in policy. For at least 70 years, there has been no mechanism for millions of people to register (Defendants have essentially conceded as much), and thus no criminal liability for failing to register. Those noncitizens "were effectively exempt from the statutory registration requirements." Ex. A (Mem. Order) 2. Now, under the IFR, those people must register, be fingerprinted, and carry proof of registration at all times on threat of criminal prosecution—prosecutions that have already begun. That was a policy choice—a choice to abandon a course followed by all previous presidential administrations (including the first President Trump administration) since President Truman. The APA therefore required Defendants to go through the appropriate procedures and engage in reasoned decisionmaking. They did neither. Given that, and the ongoing harm from the rule as a result of the lower court's incorrect ruling

1

that Plaintiffs lack standing, they are entitled to a stay or injunction pending appeal.

## I. PLAINTIFFS COMPLIED WITH RULE 8

Plaintiffs have complied with Rule 8(a) of the Federal Rules of Civil Procedure: Unlike the cases cited by Defendants, they "move[d] first in the district court" for an injunction pending appeal. Nothing requires them to accept any delay, no matter how long, before also seeking relief here.

Here, the district court did not just "fail[] to afford" relief. Fed. R. App. P. 8(a)(2)(A)(ii). It expressly declined to expedite the motion, Opp'n 9; gave Defendants more time than dictated by local rules to respond; and scheduled a hearing (unusual for this kind of motion, and unrequested by any party) six weeks out. Ex. C (Order). On June 2, over a week after Plaintiffs filed their reply, the district court cancelled the hearing. Litigants routinely seek relief on appeal while the request is pending below, and such a request was proper here where the district court here made clear that it would not expedite its consideration. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.5 (9th Cir. 2020).

## II. PLAINTIFFS HAVE ESTABLISHED STANDING

Plaintiffs have demonstrated associational standing. In response, Defendants return to their theme—that it is the statute, and not the IFR, that is causing Plaintiffs' injury. Opp'n 15. This improperly conflates standing with the merits. *See*

2

*Tanner-Brown v. Haaland*, 105 F.4th 437, 444-45 (D.C. Cir. 2024). The theory that the IFR does not impose new obligations is simply wrong for the reasons discussed by the district court and in Plaintiffs' motion and below. Mem. Order 2-4; Motion for Injunction Pending Appeal (Mot.) 18-20. Moreover, Plaintiffs' members would not experience their injuries *but for* the specific requirements introduced by the IFR. *See* Mot. 9-15 (pointing to, among other things, wage loss from the new registration process and private information collected by Form G-325R).

Defendants' opposition is notable for what they do not address. Defendants do not even cite, let alone attempt to distinguish, binding Supreme Court precedent—including precedent post-dating *TransUnion*—establishing that directly regulated parties have standing. *See* Mot. 9-10 (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), *City of Clarksville v. FERC*, 888 F.3d 477 (D.C. Cir. 2018), and *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015)). Those cases make clear that a new regulatory obligation *is* a concrete injury traditionally recognized by the courts as sufficient for Article III standing. *See id.* (explaining that *TransUnion*, which did not involve a directly regulated party, simply held that "uninjured" parties lack standing even where Congress provided a statutory cause of action). That makes sense: *TransUnion* is about uninjured plaintiffs, but being forced to do something is the kind of routine injury that has always satisfied Article III.

3

Defendants also fail to contest a host of other cognizable injuries to Plaintiffs' members. They make no mention of the financial and privacy injuries that Plaintiffs' members suffer under the IFR and which are traditionally recognized as the basis for lawsuits. Mot. 11. They do not acknowledge those members who cannot access the IFR process at all or those at risk of losing the opportunity to receive congressionally authorized immigration relief because of removal due to the IFR. *Id.* at 11-12. And they have no meaningful response to the constitutional injuries—including the chilling of speech—Plaintiffs articulate. *Id.* at 12-15.

With respect to the evidence, Defendants throw out various arguments, but none undermine this key point: there is simply no doubt that Plaintiffs' members are among the millions subject to the IFR.

Defendants reiterate the district court's concerns regarding double-hearsay, Opp'n 13, but the individual member declarations Plaintiffs have now submitted— as they indicated they could at the preliminary injunction hearing—constitute only one layer of hearsay and are indisputably admissible at the preliminary injunction stage. *See* Mot. 7-8; *see also A. A. R. P. v. Trump*, No. 24A1007, 24-1177, 2025 WL 1417281, at *3 (U.S. May 16, 2025) (granting an injunction pending further proceedings based on layers of hearsay evidence in declarations).

4

For the first time, Defendants now purport to object to the use of pseudonyms, but they do not "seriously dispute" the veracity of those declarations, *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 (D.D.C. 2018), which attest to basic biographical information establishing that each member must register. As Plaintiffs have already explained, pseudonymous member declarations are routinely relied on to show associational standing. *See* Mot. 8-9.

The cases Defendants rely upon are inapposite. *See* Opp'n 14. In *Young America's Foundation v. Gates*, the court pointed to a crucial factual question left unanswered by the declaration of the plaintiff organization's employee describing anonymous members (whether the members were still students such that the requested relief could remedy their injuries) but nevertheless relied on that declaration to find that the anonymous members had shown a cognizable injury-in-fact. 560 F. Supp. 2d 39, 48, 50 (D.D.C. 2008). In *Doe v. Von Eschenbach*, the individual plaintiffs sought to proceed by pseudonym and the court denied the request, finding that depriving the defendants of the individual plaintiffs' names prevented defendants from resolving specific factual questions necessary to determine standing. Civ. A. No. 06-2131 (RMC), 2007 WL 1848013, at *3 (D.D.C. June 27, 2007. By contrast, neither Defendants nor the district court has identified any facts missing from Plaintiffs' undisputed declarations, and Defendants have not even suggested that the use of pseudonyms has impaired their ability to litigate the

5

legal issues in this case. Nor have Defendants taken up—or even acknowledged—Plaintiffs' offer to provide information subject to a protective order. *See* Mot. 9 n.2.

With respect to Plaintiff CHIRLA's standing as an organization, Defendants mischaracterize CHIRLA's injuries as "an expansion" of its core functions. Opp'n 11. As Plaintiffs have discussed at length, the IFR is harming those core functions by, *inter alia*, reducing the number of immigration cases CHIRLA can take on and threatening its grant funding, ultimately leading to a *reduction* in its funding and services rather than an expansion. Mot. 15-17. Moreover, the IFR's lack of clarity regarding who is covered by the new registration requirement prevents CHIRLA staff from advising immigrants of their full rights and legal obligations—one of their core functions. *See* Ex. D (Salas Decl.) ¶ 18. The chilling of protected speech by CHIRLA members also harms their work "organizing . . . immigrants." *See id.* ¶¶ 3, 27. The IFR is a meaningful threat to CHIRLA and its work—at least enough to show that its functions are "perceptibly impaired." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015); *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Plaintiffs' evidence and legal argument establish standing or, at a minimum, serious legal questions regarding their standing sufficient to support an injunction pending appeal.

### III. THE IFR VIOLATES THE APA

On the APA, Defendants recycle the same argument regarding a preexisting registration requirement. They claim that they could forgo notice and comment rulemaking because the IFR "merely provides a new means" to register. Opp'n 17. This is simply untrue. As the district court recognized, until the IFR, millions of noncitizens had *no means* to register and therefore "were effectively exempt from the statutory registration requirements." Mem. Order 2; *see also* Opp'n 7 (acknowledging that the regulations have not "provided a registration form applicable to all aliens"); 90 Fed. Reg. 11793, 11795 (Mar. 12, 2025) (noting classes of noncitizens "lack[ed] a designated registration form"). Consequently, it is the IFR that implements a universal registration scheme collecting detailed private information with the attendant requirement to carry proof of registration at all times, new criminal penalties, and Fifth and First Amendment implications. Mot. 18-20; 90 Fed. Reg. at 11797 (IFR "would also result in more aliens needing to maintain evidence of registration in the mode prescribed by DHS"); *see United States v. Mendez-Lopez*, 528 F. Supp. 972, 973 (N.D. Okla. 1981) (dismissing criminal failure to carry proof of registration card for noncitizen not able to register); *see also United States v. Cain*, 583 F.3d 408, 420 (6th Cir. 2009) ("put[ting] new criminal liability on the acts or omissions of regulated persons" is legislative).

7

Every one of Defendants' cases finding procedural rules are therefore inapposite because none altered who was subject to agency regulation and liability. Instead, each rule impacted: (a) the means for already-regulated parties to voluntarily approach the agency seeking a benefit, *see James V. Hurson Assocs. v. Glickman*, 229 F.3d 277, 281 (D.C. Cir. 2000) (eliminating face-to-face appointments as a way to obtain agency rulings on food label applications); *JEM Broad Co., Inc. v. FCC*, 22 F.3d 320, 327 (D.C. Cir. 1994) (barring amendment of deficient radio license applications after a 30-day window); (b) internal agency processes, *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) (determining the cutoff date for purposes of agency search for records under FOIA); *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1050-51 (D.C. Cir. 1987) (setting the frequency and focus of internal review process) and (c) agency deadlines and timelines, *see AFL-CIO v. NLRB*, 57 F.4th 1023, 1043-44 (D.C. Cir. 2023) (changing timing for resolving disputes before the agency in the union election process); *id.* at 1045-46 (creating a 20-day presumptive waiting period before an election is held after the agency orders it ); *Lamoille Valley R.R. Co. v. I.C.C.*, 711 F.2d 295, 327-28 (D.C. Cir. 1983) (setting a filing deadline for

8

participation in agency proceedings); *Ranger v. FCC*, 294 F.2d 240, 244 (D.C. Cir. 1961) (same).[1]

By contrast, a case they cite where this Court *rejected* the procedural rule defense, *Electronic Privacy Information Centert v. U.S. Department of Homeland Security*, is directly analogous to the IFR, because in both circumstances the rules invade the "personal privacy" of millions of people. 653 F.3d 1, 6 (D.C. Cir. 2011) (addressing new security screening method). Under this Court's precedent, the IFR is a legislative rule.

---

[1] The seven exceptions to notice-and-comment rulemaking under the Alien Registration Act cited by the government are not "similar" to the IFR here. Opp. 18 n.1. Instead of adding new registration burdens like the IFR, each rule reduced burdens by either (i) eliminating a registration program or requirement, see 82 Fed. Reg. 94231-01 (Dec. 23, 2016) (NSEERS program); 26 Fed. Reg. 3455 (April 22, 1961) (fingerprint requirement); or (ii) recognizing forms already issued to certain noncitizens as proof of registration, see 78 Fed. Reg. 18457-01 (Mar. 27, 2013) (DHS admission or parole stamp); 39 Fed. Reg. 10885 (March 22, 1974) (I-221S); 35 Fed. Reg. 12268 (July 31, 1970) (Form I-485A); 30 Fed. Reg. 13862 (Nov.2, 1965) (I-90 and I-102); 25 Fed. Reg. 10495 (Nov. 2, 1960) (I-590). But the government has consistently used notice-and-comment rulemaking when it imposes a new burden on noncitizens. Examples include requiring new in-person registration and monitoring procedures under the NSEERS program, *see* 67 Fed. Reg. 40581-01, 40583-84 (June 13, 2002); requiring lawful permanent residents to obtain the new Form I-551 green card as their exclusive registration document, *see* 58 Fed. Reg. 31000, 31000 (May 28, 1993) ("The proposed rule would . . . reduce the confusing array of card types . . . [and] would provide all lawful permanent resident aliens with one document"); and requiring noncitizens to report to a government office to obtain a registration document under the newly enacted INA, *see* 17 Fed. Reg. 9989-01, 10051-52 (Nov. 6, 1952) (listing how and where noncitizens could register and what documents constituted evidence of registration under "substantive" provisions of the proposed rule).

9

Similarly, the IFR is arbitrary and capricious for overlooking important aspects of registration policy. Even if the IFR were "rationally connected with providing a registration pathway for compliance with the law"—the only responsive argument Defendants make on this claim, Opp'n 23—it must *also* (a) explain the change in 80-year-old policy; (b) consider its impact on noncitizens' Fifth and First Amendment rights; (c) address barriers to accessing the online Form G-325 for certain populations; and (d) consider the needless burden placed on noncitizens with pre-existing applications for immigration relief. Mot. 20. Failure to acknowledge and weigh these factors violates the APA *even if* the rule might be deemed substantively reasonable. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983); *see also Am. Wild Horse Pres. Campaign v. Perdue,* 873 F.3d 914, 923 (D.C. Cir. 2017).

## IV. THE IRREPARABLE INJURIES AND THE EQUITIES FAVOR AN INJUNCTION

The remaining factors tip sharply in favor of an injunction. Defendants have no response to Plaintiffs' irreparable injuries, nor do they dispute that they are currently criminally prosecuting those newly required to register. *See* Mot. 20-22; *see also* Jeremy Roebuck & Marianne LeVine, *Migrants Criminally Charged after Failing to Register with U.S. Government*, Wash. Post (May 31, 2025), https://www.washingtonpost.com/immigration/2025/05/31/trump-immigrants-registry-doj-justice/. With respect to the equities, Defendants suggest Plaintiffs are

seeking to estop them from enforcing the law. Opp'n 25. But Plaintiffs are doing no such thing—rather, Plaintiffs simply ask that the government itself follow the law. "[I]t has been well established in this Circuit that '[t]he public interest is served when administrative agencies comply with their obligations under the APA.'" *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 35 (D.D.C. 2021) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)) (collecting cases). The equities particularly favor an injunction where Plaintiffs "seek to preserve the status quo" that, until a month ago, had prevailed in this country since the end of World War II. *Texas Child.'s Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014).

## CONCLUSION

Plaintiffs respectfully request that the Court enter an injunction pending appeal.

Dated: June 3, 2025

Respectfully submitted,

/s/ *Emma Winger*

| | |
|---|---|
| Lynn Damiano Pearson | Emma Winger (DC Bar No. 90010721) |
| Cassandra Charles | Michelle Lapointe (DC Bar No. 90032063) |
| Joanna Cuevas Ingram | |
| National Immigration Law Center | Leslie K. Dellon (DC Bar No. 250316) |
| P.O. Box 34573 | Chris Opila (DC Bar No. 90029724) |
| Washington, D.C. 20043 | American Immigration Council |
| Tel: (213) 639-3900 | PMB2026 |
| Fax: (213) 639-3911 | 2001 L Street, NW, Suite 500 |

11

damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

Jennifer R. Coberly (DDC Bar No. 90031302)
American Immigration Lawyers Association
1331 G. St. NW
Washington, DC 20005
Tel: (202) 507-7692
Jcoberly@AILA.org

Nicholas Katz
CASA, Inc.
8151 15th Avenue
Hyattsville, MD 20783
Tel: (240) 491-5743
nkatz@wearecasa.org

Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

Cody Wofsy (DDC Bar No. CA00103)
American Civil Liberties Union Foundation,
Immigrants' Rights Project
425 California St, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
cwofsy@aclu.org

Anthony Enriquez (DDC Bar No. NY0626)
Sarah T. Gillman (DDC Bar No. NY0316)
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
(917) 284-6355
enriquez@rfkhumanrights.org
gillman@rfkhumanrights.org

Sarah E. Decker (DDC Bar No. NY0566)
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432
decker@rfkhumanights.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27 and Circuit Rule 27, Plaintiffs-Appellants certify:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it contains 2,536 words, excluding those parts exempted by Fed. R. App. P. 32(f) and 27(a)(2)(B).

2. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(1)(E), 32(a)(5) and 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft Office 365.

Dated: June 3, 2025

*/s/ Emma Winger*
Emma Winger
American Immigration Council

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

Plaintiffs-Appellants certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on June 3, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.


Dated: June 3, 2025                    */s/ Emma Winger*
                                       Emma Winger
                                       American Immigration Council

                                       *Attorney for Plaintiffs-Appellants*