---

# In the United States Court of Appeals
# for the District of Columbia

---

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs - Appellants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants – Appellees*,

---

On Appeal from the United States District Court for the District of Columbia
Case No. 1:25-cv-00943-TNM, Honorable Trevor N. McFadden, District Judge

---

## PLAINTIFFS-APPELLANTS' SUPPLEMENTAL MOTION FOR STAY OR, IN THE ALTERNATIVE, INJUNCTION PENDING APPEAL

---

Lynn Damiano Pearson
Cassandra Charles
Joanna Cuevas Ingram
National Immigration Law Center
P.O. Box 34573
Washington, D.C.  20043
Tel: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

Michelle Lapointe
Emma Winger
Leslie K. Dellon
Chris Opila
American Immigration Council
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

*Counsel for Plaintiffs – Appellants*
(Additional counsel listed on signature block)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

INTRODUCTION ...........................................................................................1

STATEMENT OF FACTS ................................................................................3

LEGAL STANDARD .......................................................................................8

ARGUMENT ...................................................................................................8

    I.        PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM .........8

        A.    Arrest and Prosecution.......................................................9

        B.    First and Fifth Amendment Injuries.................................11

        C.    Removal and Inability to Pursue Immigration Relief.....................14

        D.    Injury to CHIRLA's Core Programmatic Work ...............................15

    II.       PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ......17

    III.    THE PUBLIC INTEREST AND THE BALANCE OF THE
           EQUITIES TIP IN PLAINTIFFS' FAVOR .........................................21

    IV.    UNIVERSAL RELIEF IS APPROPRIATE AND NECESSARY .......21

CONCLUSION ...............................................................................................22

CERTIFICATE OF PARTIES AND AMICI CURIAE AND CORPORATE
DISCLOSURE STATEMENT .........................................................................24

CERTIFICATE OF COMPLIANCE ...............................................................26

CERTIFICATE OF SERVICE ........................................................................27

# TABLE OF AUTHORITIES

## CASES

*AFL-CIO v. NLRB*, 57 F.4th 1023 (D.C. Cir. 2023).................................18

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*,
946 F.3d 615 (D.C. Cir. 2020)....................................................15

*Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037 (D.C. Cir. 1987) ..................18

*Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914 (D.C. Cir. 2017)...........20

*Bryan v. United States*, 524 U.S. 184 (1998) .................................19

*Career Colleges & Schs. of Tex. v. U.S. Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024) .....................................................22

*Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*,
513 F. Supp. 3d 154 (D.D.C. 2021) .....................................17

*D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1 (D.D.C. 2000).................8

*Edgar v. Haines*, 2 F.4th 298 (4th Cir. 2021) ...............................12

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1 (D.D.C. 2014) .........16

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
653 F.3d 1 (D.C. Cir. 2011)...................................................... 19, 20

*Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524-CV,
2025 WL 1076820 (S.D. Fla. Apr. 4, 2025)............................9

*Food & Drug Ass'n v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ................16

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) ....................16

*Georgia Latino All. for Hum. Rts. v. Governor of Georgia*,
691 F.3d 1250 (11th Cir. 2012) ...........................................9, 11

*Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020)............................22

*Grosso v. United States*, 390 U.S. 62 (1968) ...............................13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................... 15, 17

*Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146 (D.D.C. 2021) .........................15

*Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB,

    2025 WL 1237305 (D. Idaho Apr. 29, 2025) ........................................9

*John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129 (D.C. Cir. 2017) .......8

*Leary v. United States*, 395 U.S. 6 (1969) ...............................................14

*Lindell v. United States*, 82 F.4th 614 (8th Cir. 2023) ................................10

*Marchetti v. United States*, 390 U.S. 39 (1968) .........................................13

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ......................................18

*Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544 (D.C. Cir. 2015) ...............22

*Mock v. Garland*, 697 F. Supp. 3d 564 (N.D. Tex. 2023) .................................9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

    463 U.S. 29 (1983) ...............................................................21

*N.S. v. Hughes*, 335 F.R.D. 337 (D.D.C. 2020) .......................................9, 11

*Nat'l Ass'n of Home Health Agencies v. Schweiker*,

    690 F.2d 932 (D.C. Cir. 1982) ...................................................18

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,

    145 F.3d 1399 (D.C. Cir. 1998) .................................................21

*Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428 (D.C. Cir. 1995).........16

*Nw. Immigr. Rts. Project v. U.S. Citizenship & Immigr. Servs.*,

    496 F. Supp. 3d 31 (D.D.C. 2020) ...............................................17

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,

    797 F.3d 1087 (D.C. Cir. 2015) .................................................17

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ..................................21

*Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10 (D.D.C. 2021) .......21

*Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7 (D.D.C. 2018)......9, 11

*Ramsden v. United States*, 2 F.3d 322 (9th Cir. 1993) ..................................10

*Texas Child.'s Hosp. v. Burwell*, 76 F. Supp. 3d 224 (D.D.C. 2014) ...................21

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).........................................7

iv

*Trump v. CASA, Inc.*, 606 U.S. \_\_\_, 2025 WL 1773631 (June 27, 2025) ...............22

*Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333 (D.D.C. 2020) .........12

*United States v. Claudio-Becerra*, No. PO 08-2305,

    2008 WL 11451346 (D.N.M. Aug. 28, 2008) ......................................................19

*United States v. Mendez-Lopez*, 528 F. Supp. 972 (N.D. Okla. 1981) ....................18

*United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989) .....................................19

*VanDerStok v. Garland*, 633 F. Supp. 3d 847 (N.D. Tex. 2022) ........................9, 10

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................10

## STATUTES

5 U.S.C. § 706 ..........................................................................................................21

5 U.S.C. §705 .................................................................................................. 1, 8, 21

8 U.S.C. § 1306(a) ......................................................................... 6, 9, 10, 18

8 U.S.C. § 1325 ..........................................................................................................13

8 U.S.C. § 1367 ..........................................................................................................15

8 U.S.C. §§1301-1306 .................................................................................................3

## REGULATIONS

90 Fed. Reg. 11793 (Mar. 12, 2025) ....................................... 1, 4, 5, 14, 15, 17, 19

## OTHER AUTHORITIES

Austen Erblat, *Who Is Jeanette Vizguerra, Immigrant Rights Activist Fighting*

    *Deportation in Denver,* CBS News (June 5, 2025, 6:55 PM),

    https://tinyurl.com/3dk5xekm ...............................................................................12

D.C. Cir. *Handbook of Practice and Internal Procedures* (2014) ............................8

David Morgan, *Republican US Senator Murkowski on Threat of Trump*

    *Retaliation: 'We Are All Afraid'*, Reuters (Apr. 17, 2025, 11:06 PM),

    https://tinyurl.com/2v4hu4hn .................................................................................13

Exec. Order No. 14159, Protecting the American People Against Invasion,

    90 Fed. Reg. 8443 (Jan. 20, 2025) .........................................................................4

*Immigration Law and the Myth of Comprehensive Registration*,
  48 U.C. Davis L. Rev. 141 (2014) ........................................................4

Jeremy Roebuck & Marianne LeVine, *Migrants Criminally Charged after Failing
  to Register with U.S. Government*, Wash. Post (May 31, 2025),
  https://tinyurl.com/4da4xehh ........................................................6, 10

Karina Tsui, *What We Know about the Federal Detention of Activists, Students and
  Scholars Connected to Universities*, CNN (Apr. 2, 2025, 8:48 PM),
  https://tinyurl.com/y7z8dysv ..............................................................13

*Kristi Noem Breaks Down How Federal Migrants Register Works*, Newsweek
  (Feb. 26, 2025), https://tinyurl.com/bdz9prye ........................................4

Melissa Quinn, *Trump's Crusade Against Big Law Firms Sparks Fears of Long-
  Lasting Damage*, CBS News (Apr. 2, 2025, 3:20 PM),
  https://tinyurl.com/5c766bej ..............................................................13

Memorandum from the Attorney General, General Policy Regarding Charging,
  Plea Negotiations, and Sentencing (Feb. 5, 2025),
  https://tinyurl.com/25wr8sd5 .................................................................4

Nicole Foy, *More Americans Will Be Caught Up in Trump Immigration Raids*,
  ProPublica (Mar. 18, 2025, 2:05 PM EST), https://tinyurl.com/7j8zkkwz .........20

Off. of the U.S. Att'ys, U.S. Dep't of Just., Prosecuting Immigration Crimes Report
  - 8 U.S.C. § 1325 Defendants Charged (Apr. 9. 2025),
  https://tinyurl.com/rsedtz5m ...............................................................14

Press Release, U.S. Att'y Office, Mexican National Pleads Guilty to Willful Failure
  to Register Charge in Waco (July 2, 2025), https://tinyurl.com/3wcp3erc ..........6

*Secretary Noem Announces Agency Will Enforce Laws That Penalize Aliens in the
  Country Illegally* (Feb. 25, 2025), https://tinyurl.com/mrex6hhy ........................4

*United States v. Ayala-Melendez*, 1:25-cr-00154-JEB (D.D.C., complaint filed May
  12, 2025) ..............................................................................................6

## SUPPLEMENTAL MOTION FOR A STAY OR, IN THE ALTERNATIVE, AN INJUNCTION PENDING APPEAL

Plaintiffs-Appellants file this supplemental motion for a stay pending appeal pursuant to 5 U.S.C. § 705, or in the alternative an injunction pursuant to Federal Rule of Appellate Procedure 8, of an Interim Final Rule (IFR) on noncitizen registration, 90 Fed. Reg. 11793 (Mar. 12, 2025). Plaintiffs submit this motion to supplement their initial motion for an injunction pending appeal in order to address the district court's new rationale for refusing to stay or enjoin the registration rule. That rule implements without notice and comment a new scheme that requires *for the first time* millions of noncitizens to register with the government with an entirely new form, submit biometrics, and carry their papers at all times.[1]

## INTRODUCTION

This case challenges Defendants' rushed and arbitrary implementation of a brand-new universal noncitizen registration scheme by executive action. Defendants imposed this scheme through an IFR without prior notice and consideration of public comment and without any meaningful explanation for the significant shift in policy, in violation of the Administrative Procedure Act ("APA"). As soon as the IFR went into effect on April 11, Defendants began prosecuting noncitizens newly obligated to register.

---

[1] Defendants oppose this motion.

1

The district court recognized that the IFR marks a dramatic change in course without the APA's procedural protections. As the court observed: "[T]his is a pretty big switcheroo from what's been happening, and [] the case law and the APA would require something more than what [Defendants have] done to implement this rule." Ex. C (Hrg. Tr.) 22:5-8; *see* Ex. A (April 10 Mem. Order) 2-4.

Nevertheless, the district court has twice denied Plaintiffs' request for an APA stay or injunction without reaching the merits—each time for a different reason. The first time, the court denied Plaintiffs' motion for a stay or preliminary injunction based solely on a finding that Plaintiffs lacked standing. The second time—ruling on Plaintiffs' motion for an injunction pending appeal of that decision—the district court concluded that Plaintiffs *had* established associational standing. Instead, the court denied relief on a new ground—that Plaintiffs had failed to show a risk of irreparable harm.

That is wrong. The members of Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA"), United Farm Workers of America ("UFW"), CASA, Inc. ("CASA") and Make the Road New York ("MRNY") are at imminent risk of irreparable injury. Their members are unable to access the new registration system, exposing them to the very real risk of prosecution and detention. Their members are *currently* experiencing a chilling of their protected speech and a burden to their right against self-incrimination. Their members face removal and an inability to

pursue their pending applications for congressionally-approved relief because the IFR registration scheme intends mass deportation. And CHIRLA itself faces ongoing, irreparable injury to its core functions.

Absent action from this Court, arrests will continue under an IFR that blatantly disregards the requirements of the APA. Plaintiffs respectfully request that the Court enter an APA stay or injunction to preserve the status quo ante and protect Plaintiffs and their members from irreparable harm, while they appeal the district court's denial of injunctive relief.

## STATEMENT OF FACTS

This case addresses a dramatic change in policy regarding the registration of noncitizens in the United States. While the Immigration and Nationality Act ("INA") contains registration provisions at 8 U.S.C. §§1301-1306, before the IFR, "aliens who had entered the country illegally were effectively exempt from the statutory registration requirements, since there existed no process by which they could register." April 10 Mem. Order at 2. Indeed, the United States has never previously adopted a universal noncitizen registration scheme for the purpose of facilitating mass deportation. During World War II, the federal government briefly maintained a national inventory of noncitizens with the promise to grant suspension of deportation to those who registered. Nancy Morawetz & Natasha Fernández-Silber, *Immigration Law and the Myth of Comprehensive Registration*,

48 U.C. Davis L. Rev. 141, 155-60 (2014). Since the end of World War II, the

federal government has progressively narrowed the scope of noncitizens subject to

registration and, outside the exigencies of wartime or a terrorist attack,

accomplished registration through established statutory and regulatory mechanisms

for granting immigration status and other immigration benefits. *See id.* at 161-72;

*see* April 10 Mem. Order at 2-3.

Then, on March 12, 2025, Defendants issued the IFR, newly creating a

universal registration system, and consequently a new obligation to register and

carry proof of registration at all times. 90 Fed. Reg. 11793. Their stated purpose

was not to recreate a national inventory but to facilitate mass detention and

deportation. Press Release, DHS, *Secretary Noem Announces Agency Will Enforce*

*Laws That Penalize Aliens in the Country Illegally* (Feb. 25, 2025),

https://tinyurl.com/mrex6hhy; Billal Rahman, *Kristi Noem Breaks Down How*

*Federal Migrants Register Works*, Newsweek (Feb. 26, 2025),

https://tinyurl.com/bdz9prye. Defendants promised to vigorously enforce this new

requirement. *See* Exec. Order No. 14159, Protecting the American People Against

Invasion, 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025); Memorandum from the

Attorney General, General Policy Regarding Charging, Plea Negotiations, and

Sentencing, at 3 (Feb. 5, 2025), https://tinyurl.com/25wr8sd5

The IFR creates a new English-only, online, general registration form, Form G-325R. *See* 90 Fed. Reg. at 11795. Registration requires the creation of an online myUSCIS account. *Id.* The form mandates collection of information beyond what is specifically enumerated in the INA, including uncharged criminal conduct and detailed information about family members. *See* Form G-325R Biographic Information (Registration), OMB: 1615-0166, https://tinyurl.com/3txjv5an (hereinafter "Form G-325R"). The form asks registrants to report on their past and future "activities" without discernible limits on the scope of the information requested. *Id.* at 6. The IFR also sets up a new system to submit biometrics, including fingerprints, and receive proof of registration which must be carried at all times. 90 Fed. Reg. at 11795 & n.7 Defendants estimate that the IFR will attach new registration requirements to between 2.2 and 3.2 million people. *Id* at 11797.

The IFR asserts that it is exempt from notice and comment rulemaking because it is merely "a rule of agency organization, procedure, or practice" that "does not alter the rights or interests of any party." *Id.* at 11796. Yet at the hearing below, counsel for Defendants conceded that prior to the IFR, there was no "universal form that would apply across the board" for all undocumented immigrants to register. Ex. C (Hrg. Tr.) 43:6-11. And Defendants have made good on their promise to enforce the new obligation—prosecutions for failure to register under this new scheme have already begun across the country, including in this

district. *See United States v. Ayala-Melendez*, 1:25-cr-00154-JEB (D.D.C.,

complaint filed May 12, 2025); Ex. H (multiple federal criminal complaints under

8 U.S.C. § 1306(a) filed since April 17, 2025); Ex. U (Milagros Cisneros Decl.)

¶¶3-4; Press Release, U.S. Att'y Office, Mexican National Pleads Guilty to Willful

Failure to Register Charge in Waco (July 2, 2025), https://tinyurl.com/3wcp3erc;

Jeremy Roebuck & Marianne LeVine, *Migrants Criminally Charged after Failing

to Register with U.S. Government*, Wash. Post (May 31, 2025),

https://tinyurl.com/4da4xehh.

On April 10, 2025, the court denied Plaintiffs' motion for a preliminary

injunction. The district court's order was based solely on a finding that Plaintiffs

lacked standing. *See* April 10 Mem. Order. Plaintiffs appealed and filed a motion

for an injunction pending appeal—focused significantly on the standing question.

*See* Dkt No. 2114110, Case No. 25-5152

Pursuant to Rule 8, Plaintiffs had previously sought the same relief from the

district court. On June 12, 2025, the district court issued a memorandum order

denying Plaintiffs' motion for injunction pending appeal. *See* Ex. B (June 12 Mem.

Order). Critically, however, this second ruling did not adhere to the earlier

rationale, concluding that Plaintiffs *have* demonstrated standing. *Id.* at 5-7. In

particular, the district court acknowledged that its core legal conclusion—that

persons required to register under the new rule lack standing under *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413 (2021)—was erroneous and foreclosed by precedent. *Id.* at 6-7. However, the district court again denied injunctive relief, this time concluding that Plaintiffs have not established irreparable harm. *Id.* at 7-12. While the court relied on the purportedly heightened standard for an injunction pending appeal, it made clear that its conclusion about irreparable harm would warrant denial of a preliminary injunction itself. *Id.* at 12 (finding that "Plaintiffs could not have met their burden to show irreparable harm even if this were a motion for preliminary injunction").

In light of these developments, Plaintiffs moved this Court to hold their pending motion for an injunction pending appeal in abeyance so that they could address the district court's new grounds to deny relief. On June 18, Plaintiffs filed a motion in the district court seeking a formal preliminary injunction denial order incorporating the court's current reasoning to facilitate appellate review. Plaintiffs also sought an expedited summary judgment briefing schedule. Though briefing on the renewed motion for a preliminary injunction was completed on June 30, the district court has yet to rule on either motion.[2]

---

[2] Plaintiffs appealed the June 12 memorandum order in an abundance of caution. This Court subsequently consolidated the two appeals. Dkt No. 2122386.

## LEGAL STANDARD

To succeed on a motion for stay pursuant to § 705 or an injunction pending appeal the movant must show that the district court likely abused its discretion in denying a preliminary injunction and that they are (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (injunction pending appeal); *D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2000) (stay); D.C. Cir. *Handbook of Practice and Internal Procedures* 33 (2014).

## ARGUMENT

## I.    PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM

With the IFR already in effect, Plaintiffs and their members are currently suffering or imminently at risk of a range of irreparable injuries. Any one of these injuries would be sufficient to warrant an injunction pending appeal. Taken together, they show the wide-ranging harms inflicted by the IFR's radical reimagining of noncitizen registration without review or input from the public or careful consideration by the agencies.

*A.     Arrest and Prosecution*

Courts across the country have repeatedly found that the threat of prosecution under an unlawful statutory or regulatory scheme is irreparable harm. *See, e.g.*, *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1269 (11th Cir. 2012) (preempted statute); *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, 2025 WL 1237305, at *14 (D. Idaho Apr. 29, 2025) (same); *Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524-CV, 2025 WL 1076820, at *5 (S.D. Fla. Apr. 4, 2025) (same); *Mock v. Garland*, 697 F. Supp. 3d 564, 578-79 (N.D. Tex. 2023) (unlawfully promulgated agency rule); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 856-58 (N.D. Tex. 2022) (same). And "deprivations of physical liberty" like arrests "are the sort of actual and imminent injuries that constitute irreparable harm." *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 31 (D.D.C. 2018); *N.S. v. Hughes*, 335 F.R.D. 337, 351 (D.D.C. 2020) (same).

Prosecution of Plaintiffs' members is impending here. *See, e.g.*, Ex. I ("Ana" Decl.) ¶¶ 5, 8; Ex. J ("Gloria" Decl.) ¶¶ 7, 9 (detailing how members of Plaintiff organizations do not speak English and have difficulty accessing the Internet, putting them at imminent risk of prosecution and detention for failure to register). Defendants have not only promised to enforce immigration crimes vigorously but also, consistent with this promise, begun to prosecute 8 U.S.C. §

1306(a) throughout the country, including in the District of Columbia where some CASA members reside. *United States v. Ayala-Melendez*, 1:25-cr-00154-JEB (D.D.C., complaint filed May 12, 2025); Ex. H (multiple federal criminal complaints under 8 U.S.C. § 1306(a) filed since April 17, 2025); Ex. U (Milagros Cisneros Decl.) ¶¶ 3-4; Jeremy Roebuck & Marianne LeVine, *Migrants Criminally Charged after Failing to Register with U.S. Government*, Wash. Post (May 31, 2025), https://tinyurl.com/4da4xehh (reporting prosecutions in Alabama, Arizona, Louisiana, Montana, and Texas); *see* Ex F (Escobar Decl.) ¶ 9 (describing CASA's work in Washington, D.C.).

The cases cited by the district court for the notion that "the mere threat of potential future prosecution is insufficient to establish irreparable harm," June 12 Mem. Order at 8, are inapposite. Those cases involved the limits on courts' equitable jurisdiction over existing criminal investigations and prosecutions whose procedures provide adequate means to redress purported illegalities—limits that are meant to ensure that equity does not circumvent the criminal process. *Lindell v. United States*, 82 F.4th 614, 618-21 (8th Cir. 2023) (Fed. R. Crim. Pro. 41 action to return seized property during criminal investigation); *Ramsden v. United States*, 2 F.3d 322, 324-26 (9th Cir. 1993) (same); *Cf. Younger v. Harris*, 401 U.S. 37, 43-44 (1971). But Plaintiffs are not asking the court to enjoin an ongoing criminal case. *See VanDerStok*, 633 F. Supp. at 856-58 (distinguishing *Younger* when finding

irreparable harm arising from threat of criminal and civil liability under unlawfully promulgated agency rule). "Plaintiffs are under the threat of [] prosecution for crimes" under a registration scheme that violates the APA; enforcement of that unlawful regulatory scheme "is neither benign nor equitable." *Georgia Latino All. for Hum. Rts.*, 691 F.3d at 1269.

B.    *First and Fifth Amendment Injuries*

With respect to the constitutional injuries Plaintiffs' members are currently suffering, the district court's decision is notable for what it did not hold. Reversing course from its initial decision denying a preliminary injunction, April 10 Mem. Order at 20, the court does not find that Plaintiffs have failed to establish chilling of speech under the First Amendment. Instead, the court relies entirely on the fact that Plaintiffs have not pled a standalone cause of action under the First Amendment. *See* June 12 Mem. Order at 10-11. But the fact that plaintiffs do not assert a constitutional *cause of action* is no indication that they lack a cognizable *injury*. *Cf. Ramirez*, 310 F. Supp. 3d at 31 (finding deprivation of liberty to be irreparable harm in case raising only statutory causes of action); *N.S.*, 335 F.R.D. at 351 (same).

Resisting that conclusion, the district court cited a series of cases for the unremarkable proposition that when a plaintiff *does* allege a First Amendment claim, irreparable harm requires an analysis of the likelihood of success of that

claim. June 12 Mem. Order at 10-11. But that in no way shows that one *cannot* establish irreparable harm from chilled speech unless one seeks relief under the First Amendment. That would be illogical: Why should plaintiffs have to assert a constitutional claim even where, as here, they are clearly likely to succeed on a statutory one?

As for the merits of their speech harms, Plaintiffs' members have shown that the IFR burdens their First Amendment protected speech by requiring them to report on their protected advocacy "activities," *see* Form G-325R at 6, exposing them to imminent retaliatory enforcement *for their speech* (given Defendants' express promises to use registration as a tool for enforcement). *See* Exs. I ("YL" Decl.) ¶¶ 3-4, 6; Ex. J ("ME" Decl.) ¶¶ 4-5; Ex. K ("JC" Decl.) ¶¶ 4-6; Ex. L ("ALDC" Decl.) ¶¶ 4-5; Ex. M ("NC" Decl.) ¶¶ 4-6; Ex. N ("PH" Decl.) ¶¶ 3-5, 7; Ex. E ("Luisa" Decl.) ¶¶ 4-7.

Plaintiffs can establish a First Amendment injury if the government action would cause a person of "ordinary firmness" to feel a chilling effect. *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021); *see Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 381 (D.D.C. 2020). Here, against the backdrop of extraordinary recent enforcement directly tied to speech activities, a person of "ordinary firmness" would experience chilling of speech by having to disclose to the government First Amendment protected activity on a form whose stated

purpose is to aid in deportation efforts. *See Austen Erblat, Who Is Jeanette Vizguerra, Immigrant Rights Activist Fighting Deportation in Denver,* CBS News (June 5, 2025, 6:55 PM), https://tinyurl.com/3dk5xekm; Karina Tsui, *What We Know about the Federal Detention of Activists, Students and Scholars Connected to Universities*, CNN (Apr. 2, 2025, 8:48 PM), https://tinyurl.com/y7z8dysv; David Morgan, *Republican US Senator Murkowski on Threat of Trump Retaliation: 'We Are All Afraid'*, Reuters (Apr. 17, 2025, 11:06 PM), https://tinyurl.com/2v4hu4hn; Melissa Quinn, *Trump's Crusade Against Big Law Firms Sparks Fears of Long-Lasting Damage*, CBS News (Apr. 2, 2025, 3:20 PM), https://tinyurl.com/5c766bej; *see also* Ex. G (Fontaine Decl.) ¶ 35.

In addition, Plaintiffs members' Fifth Amendment rights are burdened right now by a registration process that requires them to admit to criminal conduct—illegal entry under 8 U.S.C. § 1325—on threat of federal prosecution, without providing any evident mechanism to assert a privilege (the options are "yes" or "no"). *See* Form G-325R at 7. Registrants must report any uncharged criminal conduct in Form G-325R and, by simply registering using a form targeting those who entered the country in violation of 8 U.S.C. §1325, are providing "a significant link in the chain of evidence tending to establish [their] guilt." *Marchetti v. United States*, 390 U.S. 39, 48 (1968) (cleaned up); *see Grosso v. United States*, 390 U.S. 62, 68 (1968). Contrary to the court's claim, this harm is

not speculative. *See* June 12 Mem. Order at 11. There is "ample reason to fear" that such a link would lead to prosecution. *Leary v. United States*, 395 U.S. 6, 16 (1969). Defendants have promised to vigorously enforce this particular offense and indeed, have begun doing so across the country. *See* Off. of the U.S. Att'ys, U.S. Dep't of Just., Prosecuting Immigration Crimes Report - 8 U.S.C. § 1325 Defendants Charged (Apr. 9. 2025), https://tinyurl.com/rsedtz5m (reporting 1,596 prosecutions in March 2025, a 240 percent increase compared to January 2025).

While a standalone Fifth Amendment claim might not become ripe until the privilege is asserted, June 12 Mem. Order at 11, members are cognizably *harmed* by being forced to choose between exposure to criminal prosecution and an attempt to invoke the Fifth Amendment without any clear means to do so, and the very attempt to invoke such a right could be used against those members in future immigration proceedings.

## C. Removal and Inability to Pursue Immigration Relief

The district court misconstrued the harm that arises when members with pending relief—including relief where information is otherwise subject to strict confidentiality provisions—register. The injury is not an "informational harm," June 12 Mem. Order at 9, but removal from the United States and the inability to pursue congressionally authorized relief. Individuals like CHIRLA members Ursela and Tiana and MRNY member Guvelia, who have pending applications for

a U visa as a victim of crime or a self-petition under the Violence Against Women Act (VAWA), must now register because those applications do not count as registration documents or evidence of registration. *See* 90 Fed. Reg. at 11794-95; Ex. L ("Ursela" Decl.) ¶ 4; Ex. N ("Guvelia" Decl.) ¶ 9; Ex. M ("Tiana" Decl.) ¶ 5. But unlike these forms of relief, where Congress has set strict limits on the use of information submitted, *see* 8 U.S.C. § 1367, the IFR sets no such limits and instead explicitly anticipates that it will be used for immigration enforcement. *See* 90 Fed. Reg. at 11797. Thus registering will place these individuals in the direct crosshairs of immigration authorities and prevent them from pursuing immigration relief for which they are eligible. This harm is irreparable. *See Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 172 (D.D.C. 2021), *aff'd in part, rev'd in part, and remanded*, 27 F.4th 718 (D.C. Cir. 2022) (finding expulsion without opportunity to apply for relief to be irreparable harm and collecting similar cases).

### D. Injury to CHIRLA's Core Programmatic Work

Finally, the district court was wrong to reaffirm its previous finding that CHIRLA has not shown injury under the rule. June 12 Mem. Order at 7 n.1. CHIRLA has established that the IFR impacts its core programmatic work of providing legal services sufficient for both standing and irreparable harm. *See Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Here, unlike

the cases relied upon by the district court, CHIRLA is not simply an advocacy and public education organization. *See* April 12 Mem. Order at 7-10 (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919-21 (D.C. Cir. 2015) (education and advocacy around poultry inspection), *Food & Drug Ass'n v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (advocacy around abortion drug), *Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C. Cir. 1995) (taxpayer education and advocacy)); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 23–24 (D.D.C. 2014) (advocacy organization asserting lobbying related expenditures).

Instead, CHIRLA has identified the following concrete harms to its core programmatic work: 1) at least 100 current clients it has already identified who appear required to register under the IFR, including 60 U visa applicants (those applying for immigration relief as victims of certain serious crimes), Ex. D (Salas Decl.) ¶¶ 18; 2) the need for legal staff to spend additional time—impacting their ability to provide legal representation in other ways—to review client files to determine the need to register, which will require filing a FOIA request for some cases, and the need to engage in separate consultations with clients about registering, *id.* ¶¶ 18, 20; 3) an increase in the volume of inquiries about registration through its hotline, evidenced in part by numerous calls inquiring about registration in anticipation of the IFR taking effect, *id.* ¶¶ 16-17; 4) a strain

on its personnel and financial resources as a result of this increased volume of work arising from the IFR, *id.* ¶¶ 17-21; and 5) interference with existing grant deliverables that fund legal services for immigration benefits and removal proceedings on a per case basis, *id.* ¶¶ 19; 11. Underscoring that such harm is not speculative, the government's own numbers in the IFR indicate that it will impact 2-3 million people. 90 Fed. Reg. at 11797.

Within this circuit, courts have held that similar injuries are sufficiently concrete and nonspeculative for both standing and irreparable harm. *See Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 169-71, 176 (D.D.C. 2021); *Nw. Immigr. Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 46-50, 80 (D.D.C. 2020). Notably, an organization need not be entirely hamstrung—its activities need only be "perceptibly impaired." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1100 (D.C. Cir. 2015) ("*PETA*") (quoting *Havens*, 455 U.S. at 379).

## II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

In light of the district court's conclusion that Plaintiffs have established associational standing, June 12 Mem. Order at 5-7, Plaintiffs will not repeat those arguments in this motion but will incorporate them. *See* Dkt No. 2114110, Case No. 25-5152 at 13-24. Instead, the Court is free to proceed directly to the merits of the APA claim.

The IFR plainly violates the APA. As the district court observed, the IFR represents a significant change in policy that alters the rights and interests of parties such "that the case law and the APA would require something more than what [Defendants have] done to implement this rule." Ex. C (Hrg. Tr.) 22:6-8; *see* April 10 Mem. Order at 2-4. The IFR violates the procedural requirements of the APA by foregoing notice and comment prior to implementation, because it is not merely an "internal house-keeping" procedural rule. *AFL-CIO v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987)). Instead, it represents a "substantive change in existing . . . policy" that imposes new burdens. *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014); *see Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982) (finding a rule changing a sixteen-year-old policy that imposes new burdens not to be procedural).

The IFR exposes the newly regulated to new criminal liability, because noncitizens who were ineligible to use any of the designated registration forms were under no enforceable obligation to register or to carry any proof of registration. *See* 8 U.S.C. § 1306(a) (making it a crime to "*willfully* fail[] or refuse[]" to register) (emphasis added); *United States v. Mendez-Lopez*, 528 F. Supp. 972, 974 (N.D. Okla. 1981) (dismissing criminal failure to carry proof of registration card for noncitizen not able to register); *United States v. Claudio-*

*Becerra*, No. PO 08-2305, 2008 WL 11451346, at *3 (D.N.M. Aug. 28, 2008)

(dismissing failure to register charge for failure to establish defendant had

"knowledge of his duty to apply for registration and be fingerprinted" and

"deliberately failed or refused to apply for registration"); *see also Bryan v. United*

*States*, 524 U.S. 184, 191–92 (1998) ("willful" conduct requires "a 'bad purpose'"

and proof "that the defendant acted with knowledge that his conduct was

unlawful") (cleaned up)). Rules that impose criminal sanctions "should be held to

the strict letter of the APA." *United States v. Picciotto*, 875 F.2d 345, 346 (D.C. Cir.

1989).

 The IFR also trenches on the Fifth Amendment rights of those required to

register. *See supra* at 13-14. And the IFR similarly burdens the First Amendment

rights, *see supra* at 11-13, and the privacy rights of those newly required to

register, *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 653 F.3d 1, 6

(D.C. Cir. 2011) (finding a security screening method that resulted in a greater

invasion of "personal privacy" constituted a "new substantive burden").

 Moreover, the IFR has such a significant impact on the public that notice and

comment are necessary. For the first time ever, Defendants seek to impose a

universal obligation on all noncitizens over 18 to carry proof of registration

through this rule. *See* 90 Fed. Reg. at 11797. Doing so exposes everyone in the

country (not just noncitizens) to the increased risk of being stopped and asked to

provide proof of registration—in particular, those more likely to be targeted because of their race. *See* Nicole Foy, *More Americans Will Be Caught Up in Trump Immigration Raids*, ProPublica (Mar. 18, 2025, 2:05 PM EST), https://tinyurl.com/7j8zkkwz; *see also* Ex. G (Fontaine Decl.) ¶ 37 (describing risk of racial profiling of MRNY members under IFR). The concept of a national ID has long been controversial for similar reasons. The public was entitled to raise these concerns and propose alternatives before such a dramatic change in policy goes into effect. *See Elec. Priv. Info. Ctr.*, 653 F.3d at 6 (finding a rule not procedural when it "affects the public to a degree sufficient to implicate the policy interests animating notice-and-comment rulemaking").

The IFR also violates the substantive requirements of the APA because it, *inter alia*: (a) fails to acknowledge or explain the change in 80-year-old policy, *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017); (b) fails to consider the Fifth and First Amendment implications of the new rule; (c) fails to address the evident barriers to accessing the online-only, English-only registration process for elderly, disabled, impoverished, or limited-English-proficient noncitizens; and (d) does not consider the needless burden placed on those who have pending or even granted applications for congressionally-authorized immigration relief, *see supra* at 14-15. Defendants' failure to consider these

important factors was arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

## III. THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES TIP IN PLAINTIFFS' FAVOR

The balance of equities tips in Plaintiffs' favor and the public interest favors an injunction. "[I]t has been well established in this Circuit that '[t]he public interest is served when administrative agencies comply with their obligations under the APA.'" *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 35 (D.D.C. 2021) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)) (collecting cases). Until two months ago, the government had not enforced a universal registration requirement and attendant criminal penalties since the mid-20th century. Given that longstanding state of affairs, the balance of equities favors "a preliminary injunction that serves only to preserve the relative positions of the parties until a trial on the merits can be held." *Texas Child.'s Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014) (quoting *Camenisch,* 451 U.S. at 396).

## IV. UNIVERSAL RELIEF IS APPROPRIATE AND NECESSARY

Universal relief is proper and needed. Stays under 5 U.S.C. § 705 are universal, just like vacaturs under 5 U.S.C. § 706. *See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (holding that the APA calls for universal vacatur). Section 705 grants courts authority to "issue all necessary and appropriate process to postpone the effective date of an agency

action or to preserve status or rights," and "therefore 'authorizes courts to stay agency [action] pending judicial review,' not just to enjoin their application to the injured parties before the court." *Gomez v. Trump*, 485 F. Supp. 3d 145, 202-03 (D.D.C. 2020) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 562 (D.C. Cir. 2015) (Kavanaugh, J., dissenting in part)); *see also Trump v. CASA, Inc.*, 606 U.S. ___, 2025 WL 1773631, at *19 (June 27, 2025) (Kavanaugh, J., concurring) ("[I]n cases under the Administrative Procedure Act, plaintiffs may ask a court to "preliminarily 'set aside' a new agency rule."); *Career Colleges & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("[T]he scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted."). The appropriate remedy is to stay the IFR in its entirety pending the conclusion of this case.

## CONCLUSION

Plaintiffs respectfully request that the Court enter a stay or, in the alternative, an injunction pending appeal.


Dated: July 9, 2025

Respectfully submitted,

*/s/ Emma Winger*

Lynn Damiano Pearson

Emma Winger (Bar No. 66184)

Cassandra Charles

Michelle Lapointe (Bar No. 54940)

Joanna Cuevas Ingram

Leslie K. Dellon (Bar No. 27795)

National Immigration Law Center

Chris Opila (Bar No. 66175)

P.O. Box 34573

American Immigration Council

Washington, D.C. 20043
Tel: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

Jennifer R. Coberly (Bar No. 63914)
American Immigration Lawyers
Association
1331 G. St. NW
Washington, DC 20005
Tel: (202) 507-7692
Jcoberly@AILA.org

Cody Wofsy (Bar No. 61550)
American Civil Liberties Union
Foundation,
Immigrants' Rights Project
425 California St, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
cwofsy@aclu.org

Anthony Enriquez (Bar No. 66138)
Sarah T. Gillman (Bar No. 61974)
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
(917) 284-6355
enriquez@rfkhumanrights.org
gillman@rfkhumanrights.org

Sarah E. Decker
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432
decker@rfkhumanights.org

# CERTIFICATE OF PARTIES AND AMICI CURIAE AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 27(a)(4) and 28(a)(1)(A), Plaintiffs-Appellants certify that the following parties appeared before the district court or this Court:

1. Coalition for Humane Immigrant Rights, *Plaintiff-Appellant*

2. United Farm Workers of America, *Plaintiff-Appellant*

3. CASA, Inc., *Plaintiff-Appellant*

4. Make the Road New York, *Plaintiff-Appellant*

5. U.S. Department of Homeland Security, *Defendant-Appellee*

6. Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, *Defendant-Appellee*

7. U.S. Citizenship and Immigration Services, *Defendant-Appellee*

8. Kika Scott, in her official capacity as Senior Official Performing the Duties of the Director, *Defendant-Appellee*

9. U.S. Immigration and Customs Enforcement, *Defendant-Appellee*

10. Todd Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, *Defendant-Appellee*

11. U.S. Customs and Border Protection, *Defendant-Appellee*

12. Pete R. Flores, in his official capacity as Acting Commissioner, U.S. Customs and Border Protection, *Defendant-Appellee*

13. U.S. Department of Justice, *Defendant-Appellee*

14. Pamela Bondi, in her official capacity as Attorney General, *Defendant-Appellee*

Immigration Reform Law Institute appeared as amici before the district court or this Court.

Plaintiffs-Appellants further state that none of the aforementioned Plaintiffs has any parent companies, subsidiaries, or affiliates owning outstanding securities in the hands of the public.


Dated: July 9, 2025                                 */s/ Emma Winger*
                                                    Emma Winger
                                                    American Immigration Council

                                                    *Attorney for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 27 and Circuit Rule 27, Plaintiffs-Appellants certify:

1.     This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,043 words, excluding those parts exempted by Fed. R. App. P. 32(f) and 27(a)(2)(B).

2.     This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(1)(E), 32(a)(5) and 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft Office 365.

Dated: July 9, 2025                     */s/ Emma Winger*
                                        Emma Winger
                                        American Immigration Council

                                        *Attorney for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

Plaintiffs-Appellants certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on July 9, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: July 9, 2025

*/s/ Emma Winger*
Emma Winger
American Immigration Council

*Attorney for Plaintiffs-Appellants*